# THE SUPREME COURT

### OF THE

# STATE OF NEVADA

## JANUARY TERM, 1923

[No. 2528]

### POSTAL TELEGRAPH–CABLE COMPANY (A CORPORATION), APPELLANT, *v.* A. H. HOWE, RESPONDENT. [211 Pac. 358]

1. TELEGRAPHS AND TELEPHONES—LIMITATION OF LIABILITY UNDER INTERSTATE COMMERCE ACT BINDING ON SENDER WITHOUT ASSENT.

   Under Interstate Commerce Act, as amended by the act of June 18, 1910 (U. S. Comp. St., sec. 8563, et seq.), bringing telegraph companies within the operation of the act, the sender of an unrepeated interstate message is bound as a matter of law, without actual assent, by a provision in the company's lawfully established tariff limiting its liability for a mistake in transmission to the amount of the usual charge for sending the message, unless the mistake is the result of wilful misconduct or gross negligence, as any deviation from such provision would violate the statutory requirement of equality and uniformity of rates.

2. COURTS—STATE SUPREME COURT BOUND BY DECISION OF UNITED STATES SUPREME COURT AS TO EFFECT OF LIMITATION OF LIABILITY FOR MISTAKE IN TRANSMISSION OF UNREPEATED INTERSTATE MESSAGE.

   The state supreme court must defer to the decision of the United States Supreme Court that the sender of an unrepeated interstate telegram is bound, under Interstate Commerce Act, as amended by the act of June 18, 1910 (U. S. Comp. St. 8563, et seq.) by a provision in the company's lawfully established tariff limiting its liability for mistake in transmission to the usual charge for sending the message.

3. TELEGRAPHS AND TELEPHONES—COMPANY NOT ESTOPPED BY
   AGREEMENT VIOLATING STATUTORY REQUIREMENT OF UNIFORMITY
   OF RATES.
       Under Interstate Commerce Act, as amended by the act
   of June 18, 1910 (U. S. Comp. St., sec. 8563, et seq.), bringing
   telegraph companies within the operation of the act, a tele-
   graph company is not estopped by an agreement to pay a loss
   resulting from a mistake in transmission of an unrepeated
   interstate message from asserting that its liability is limited
   by a provision printed on the back of the telegram to the
   amount of the usual charge for sending the message, estoppel
   being inapplicable to a contract which is invalid as violating
   the requirement of uniformity and equality of rates.

APPEAL from Second Judicial District Court, Washoe
County; *Thomas F. Moran,* Judge.

Action by the Postal Telegraph - Cable Company
against A. H. Howe. From a judgment for plaintiff in
an insufficient amount, it appeals. **Reversed and
remanded, with directions.**

*Brown & Belford,* for Appellant:

It is a legal proposition, fundamental in the case at
bar, that where an interstate telegraphic message is
written upon a telegraph blank or form containing the
usual contract, limiting, in accordance with the estab-
lished practice, rules, and regulations of the telegraph
company, the liability of the company for errors in the
transmission or delivery of the message, and the mes-
sage is sent as an "unrepeated" message, in accordance
with the form printed upon the telegram for the send-
ing of which the unrepeated rate is charged, the limita-
tion of liability contained on the printed back is lawful
and fixed the limit of the responsibility of the telegraph
company in the event of a mistake and cannot be waived,
or a different liability imposed or assumed by agree-
ment or otherwise.

Prior to the act of Congress of June 18, 1910, amend-
ing the Interstate Commerce Act, there was a conflict of
authority between the courts of various states as to the
validity of the contract in question. Some state courts
followed, and others refused to follow, the ruling of the

United States Supreme Court in Primrose v. Western Union Tel. Co., 154 U. S. 1, where the contract was considered and the limitation contained therein held to be valid.

Section 1 of the Interstate Commerce Act, as amended by the said act of June 18, 1910, made the provisions of the Interstate Commerce Act applicable to telegraph companies engaged in sending messages from one state to another. The provisions of section 1, with those of sections 2, 3, and 15 of the act, constitute a specific regulation by Congress of interstate commerce by telegraph. Congress itself has sanctioned the historic classifications of "unrepeated" and "repeated" messages.

The validity of the classifications, and of the different liabilities attached to the different rates, was recognized by the Interstate Commerce Commission in Clay County Products Co. v. Western Union (commonly called the Cultura case), 44 Interst. Com. Rep. 670. This ruling of the commission has received the sanction of the Supreme Court of the United States. Postal Tel. Cable Co. v. Warren-Godwin Co., 40 S. C. R. 69; Postal v. Dickerson, 41 S. C. R. 60; Western Union v. Speight, 41 S. C. R. 11; Western Union v. Esteve Bros. & Co., 256 U. S. 566.

Since the act of June 18, 1910, the courts of the country have recognized that the liability for interstate telegraphic messages is under federal control and determined by federal law (Nichols v. Western Union, 44 Nev. 148) notwithstanding any state statute, or previous state policy or rule declared by the state courts. Haskell Implement Co. v. Postal, 114 Me. 277, 96 Atl. 219; Durre v. Western Union, 165 Wis. 190, 161 N. W. 755; Western Union v. Shade, 137 Tenn. 214, 192 S. W. 924; Western Union v. Spencer, 53 Okl. 398, 156 Pac. 1175; Meadows v. Postal, 173 N. C. 240, 91 S. E. 1009; Western Union v. Foster, 224 Mass. 365, 113 N. E. 192; Western Union v. Kaufman, 162 Pac. 708; Western Union v. Boling, 91 S. E. 154; Boyce v. Western Union, 89 S. E. 109.

A waiver of the limitation of liability, or any assumption by agreement or otherwise of a greater liability than that fixed by the telegraph contract, and the rules and regulations of the company with regard to "unrepeated" messages, would constitute an unlawful discrimination in favor of the sender of the message and be violative of the rule of uniformity and equality required by the Interstate Commerce Act. Even if such promise were made, it would be invalid for want of consideration, and would be an attempt to accord defendant special and favorable treatment not generally accorded to senders of telegraph messages. Postal v. Warren-Godwin, supra; Western Union v. Esteve Bros. & Co., supra. In the latter case, the message was not written upon a printed blank containing any contract, but the supreme court held the sender bound by the rules, classification, and limitation of liability enforced by the company.

The Interstate Commerce Act forbids railroads from allowing unlawful preferences or advantages. The principles involved are equally applicable to interstate telegraphic communication. A. T. & S. F. Ry. Co. v. Robinson, 233 U. S. 173, 58 L. Ed. 901; Phillips Co. v. Grand Trunk Ry. Co., 236 U. S. 662, 59 L. Ed. 774; Georgia F. & R. Co. v. Blish Milling Co., 241 U. S. 190, 60 L. Ed. 948; C. R. I. & G. Ry. Co. v. Shroyer, 197 S. W. 773; Donohoo Horse and Mule Co. v. M. K. & T. Ry. Co., 149 Pac. 436.

*Harwood & Tippett,* for Respondent:

The facts in this case differentiate it from any of the numerous cases cited by appellant, and sustain the proposition contended for by respondent. Numerous courts, including the Supreme Court of the United States, have held that an interstate message is controlled by the act of Congress of June 18, 1910, but a different situation arose here. Mr. Howe, through no fault of his own, and through the admitted fault of the telegraph company, found that he had sold stock which

he did not own, and for which no one was responsible to him. ·He could gamble or not, as he saw fit, and it is clearly indicated in the testimony that he might have been willing to do so. It would have been a very fortunate gamble if he had taken the chance, but there is no question that was the situation when the error was discovered. It the telegraph company chose to stand on its contract and let Mr. Howe speculate on his own account or close out the deal and take the loss and make claim under the contract, well and good. That was its privilege. But, instead of doing that, its agents and managers showed the greatest concern and said to Mr. Howe in substance: "It's our fault; we're very sorry; close out the deal at the least possible loss, send the bill to us, and we will pay the damage." He did as requested, and sustained a loss, and appellant is estopped now to deny its liability, as the liability arose entirely subsequent to and independent of the contract and rested upon the principles of estoppel.

The vice of the whole thing is the premise that the contract is reasonable. The alternatives offered the patrons of the company are so unreasonable that it is practically impossible to do business with it. It affords no consolation to a man requiring speed in telegraphic service to be offered a repeat message rate or an insured rate. The first limits the company's liability to fifty times the charge for the message, and the insured message rate involves details and difficulties that make it unusable.

The principle of estoppel certainly is applicable unless Congress has the power and has in fact used that power so as to erect a moratorium or a sort of halo of inviolate sanctity around a telegraph company engaged in interstate commerce. If the argument of appellant based upon the Esteve case is sound, then it matters not what promises the telegraph company's officers may make, how reckless its employees may be, how its customers may be fooled into relying upon its word to change their position. The answer to any one who has

suffered from its interstate service is found in the simple statement that the law does not permit it to discriminate. This answer involves the complete isolation of a common carrier or telegraph company from every other obligation, liability, or consequence of its act with relation to its customers. The federal courts are bound by this absurd rule promulgated by the Supreme Court of the United States, but the state courts are not.

In making this argument, we have assumed to be well established several principles of law affecting these contracts and these claims for damages, but the principles involved are so elementary, in the sense of being fundamental, that it is more a question of logic and the application of correct principles than it is of the citation of authorities.

By the Court, SANDERS, J.:

The Postal Telegraph - Cable Company, a Nevada corporation, engaged in the business of sending, receiving, and transmitting for hire telegraph and telephone messages from and to its office located at Reno, Nevada, and to and from places in and without said state, brought this action against A. H. Howe to recover the sum of $664.28 on account of telegrams and long-distance telephone messages sent and received by said Howe, at his special instance and request, during the months of May and June, 1919. The case was tried before the court without a jury. Upon its findings of facts, the court concluded as a matter of law that the plaintiff's claim should be reduced to $330.80, and rendered judgment for that sum. The plaintiff appeals from said judgment, and also from an order overruling and denying its motion for a new trial.

The facts as gathered from the pleadings and the findings, stated in narrative form, are as follows:

The defendant was, and is now, a mining stock broker at Reno, Nevada, and transacted a larger part of his

business of buying and selling.stock through one R. L. Colburn, a mining stock broker on the San Francisco Stock Exchange. On the 12th day of April, 1919, having an order to sell certain stocks, the defendant delivered to plaintiff, at its Reno office, a telegram written on one of its blank forms, reading as follows:

"Colburn, San Francisco: Sell five hundred Zone, one dollar; two thousand High Divide, twenty; Buy one Grimes, twenty-four. Signed, Howe."

The plaintiff, in transmitting said message, caused the same to be transmitted or transcribed and delivered to said Colburn so as to read "twenty thousand High Divide, twenty," instead of "two thousand High Divide, twenty." Before the discovery of the mistake Colburn sold 11,000 shares of High Divide stock, pursuant to said telegraphic order, at 20 cents per share, with the result that the defendant was oversold, or short, 9,000 shares of said stock at 20 cents per share. Immediately upon discovering the error in the order to sell, the defendant notified plaintiff thereof, in the person of one T. H. Brown, the manager of its Reno office, and secretary of the plaintiff corporation, who, after talking with a Mr. Hearn, the superintendent of all its lines and business west and northwest of Denver, including Nevada and northern California, went to defendant on the same day or the day following and stated that he was instructed by said superintendent of the company to say that the mistake in the telegram was clearly that of the company, and requested the defendant to close the transaction with as little loss as possible and send the bill to the company and they would pay it. The defendant adopted and acted upon the request of plaintiff, and closed the transaction by buying 9,000 shares of High Divide stock—7,000 at 23 cents per share, and 2,000 at 24 cents per share—resulting in a net loss of $333.48. In the latter part of April, 1919, High Divide advanced to as high as 30 or 31 cents per share, and thereafter declined, and at the time of the trial of the

action its market value was 4 or 5 cents per share. The defendant, on the 18th day of April, made claim of plaintiff for the said sum of $333.48, which was refused.

The telegram involved is an "unrepeated" message, and the court finds that the charge therefor was 69 cents. The defendant had been doing a large amount of business with plaintiff, and his telegraph bills were running from $200 to $800 per month. The defendant, at the time of filing his answer, offered that plaintiff might take judgment for the sum of $330.80, and no more, with accrued costs to the time of filing the answer.

Plaintiff requested certain findings of fact, which were refused, and an exception to the refusal taken. The requested findings included a general finding that the affirmative allegations in plaintiff's reply to the defendant's answer and counter-claim were true. The reply was, in substance, that the telegram was sent in accordance with the terms of the contract printed on the back thereof, which limits the liability of the company in case of a mistake in an unrepeated message to the amount of the usual and ordinary charge for sending the message, which, in this instance, was 69 cents. The reply also contained allegations respecting the meaning of the classifications into "repeated" and "unrepeated" messages and the liability assumed for such messages, also that the message was an interstate message, and by the act of Congress of June 18, 1910 (U. S. Comp. St., sec. 8563, et seq.), the Interstate Commerce Commission was given and had full power over the rates, charges, facilities, classifications, and practices of telegraph companies engaged in interstate commerce, and that by reason of said act and the premises the plaintiff was entitled to judgment for the full sum demanded, less the sum of 69 cents.

A proposed finding denying plaintiff's purported request and assumption of liability, and denying that plaintiff, or its agents, had made any agreement assuming to pay full amount of defendant's loss or damage, or any amount other than that fixed by the telegraph

contract for a mistake in the transmission of an unrepeated message, was refused.

In view of the facts as found, and of the refused findings, it is apparent that the question for our determination is whether, under the Interstate Commerce Act, as amended by the act of June 18, 1910 (36 Stats. at Large, 539, 544; 4 Fed. Stats. Ann., 2d ed., p. 337), the judgment is against law.

**1, 2.** Since the amendment of June 18, 1910, to the Interstate Commerce Act, bringing telegraph companies within the operation of that act, in cases brought against telegraph companies in which the sole question is the amount of damages to be recovered for mistake in the transmission of unrepeated messages, it is held that the sender is, without assent in fact, bound as a matter of law by the provision in the company's lawfully established tariff, limiting liability for mistake in transmission of such messages, and any deviation therefrom would violate the statutory requirement of equality and uniformity of rates, except, of course, where the mistake is the result of wilful misconduct or gross negligence. Western Union Tel. Co. v. Esteve Bros. & Co., 256 U. S. 566, 41 Sup. Ct. 584, 65 L. Ed. 1094. This court is in duty bound to defer to this decision of the supreme court. Nichols v. Western Union Tel. Co., 44 Nev. 148, 191 Pac. 573.

If, then, the finding that the plaintiff company, through its authorized agents, on being informed of its mistake in the transmission of the telegram, requested the defendant to close the transaction with as little loss as possible to the company and send the bill to the company and the company would pay it, is violative of the Interstate Commerce Act, as amended by the act of June 18, 1910, and infringes the rule declared by the supreme court, we should be impelled to conclude that the judgment should be reversed and the case remanded, with directions that judgment be rendered for the full sum demanded in plaintiff's complaint, less the sum of 69 cents, the cost of the telegram.

3.  Counsel for the defendant concede the rule to be that stated in the case of Esteve Bros. & Co., and other cases cited by counsel for plaintiff, but strongly argue that the rule is not applicable to the situation here, and assert that the transaction between the parties as disclosed by the findings must be governed and decided by the application of the doctrine of estoppel.  In support of this proposition we are admonished that no court, state or federal, should go to the extent of holding that the Interstate Commerce Act, as amended, does, may, or shall stand in the way of an equitable estoppel when the facts demand its application in the interest of justice and right.

In 2 Page on Contracts, sec. 1094, it is said:

"If the contract is invalid, as against policy or as forbidden by statute, estoppel has no application."

In Southern R. Co. v. Lewis & Adcock Co., 139 Tenn. 37, 201 S. W. 131, L. R. A. 1918C, 976, it is held that estoppel is not applicable to a contract invalid under the Interstate Commerce Act.

In 10 Ruling Case Law, p. 801, it is said:

"Manifestly the reason underlying the limitation on the doctrine of estoppel presently under discussion is that, when the matter of illegality arises, the question ceases to be one solely between the parties or between private individuals.  Accordingly an estoppel is not available to sustain a contract of carriage which is invalid under the Interstate Commerce Act."

Justice Brandeis, in the case of Esteve Bros. & Co., declares that the act of 1910 introduced a new principle into the legal relations of the telegraph companies with their patrons which dominated and modified the principles previously governing them.  He further said:

"Uniformity demanded that the rate represent the whole duty and the whole liability of the company.  It could not be varied by agreement; still less could it be varied by lack of agreement.  The rate became, not as before a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed."

There is no doubt that in the case at bar the plaintiff, in assuming to pay the loss resulting to the defendant from its admitted mistake in the transmission of the message involved, assumed voluntarily an additional liability or obligation forbidden by the statute in the interest of uniformity and equality of rates. Hence we are impelled to conclude that the estoppel relied upon by counsel for the defendant in support of the judgment has no application.

The judgment is reversed, and the case is ordered remanded, with directions to the trial court to render judgment in favor of plaintiff for the full amount demanded in its complaint, to wit, $664.28, less the sum of 69 cents, with interest thereon, the cost of the telegram here involved.