## WESTERN UNION TELEGRAPH CO. v. WOODS et al. (No. 2927.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 6, 1924.)

**Telegraphs and telephones ⬡=54(8)—Stipulation requiring filing of claims within certain time cannot be waived by company or agent.**

Stipulation in telegrams, providing for filing of claims within a certain time, being a limitation of liability formally adopted and filed and approved by Interstate Commerce Commission, pursuant to federal act, became lawful condition, upon which messages were received and sent, and hence could not be waived by company or its agent.

Appeal from Hunt County Court; Olin P. McWhirter, Judge.

Action by C. H. Woods and others against the Western Union Telegraph Company. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

C. H. Woods & Co. were engaged in buying and selling cotton, with principal office during the month of November, 1921, in Ladonia, Tex. The firm had an agent in Fall River, Mass., for the purpose of making sale of the cotton bought in Texas and elsewhere. In transmission of certain telegrams concerning the sale of cotton, from the agent to his principals and from the firm to the agent, the telegraph company made an error resulting, as claimed, in loss to C. H. Woods & Co. To recover compensation for the loss they sued the Western Union Telegraph Company, filing their petion in the county court of Hunt county, Tex., on August 16, 1922. The telegraph company pleaded, besides denial, that the messages were each unrepeated messages, and that they were accepted for transmission by it under the condition and stipulation that the company would not be liable for any damages in case a claim was not presented in writing within 60 days after the message was filed with the company for transmission. The company further alleged that no such claim in writing was filed within the specified time. By supplemental petion the plaintiffs pleaded estoppel against the telegraph company from urging the defense of failing to file a claim for damages within 60 days. In reply the telegraph company, besides denial, filed a demurrer on the ground that estoppel by waiver of the stipulation mentioned could not legally be asserted against the defendant.

The case was tried before the court without a jury, and in keeping with special findings of fact a judgment, was entered in favor of the plaintiffs.

The court made the following findings, as material to state:

"I find that on November 10, 1921, plaintiffs obtained and had an option on 80 bales of cotton located in Quinton, Okl., owned by the Quinton Gin Company; and said Quinton Gin Company, the owner of said cotton, agreed to sell said 80 bales of cotton to plaintiffs at 18.75 cents per pound landed at Providence, R. I., provided plaintiffs exercised said option and purchased said cotton at said price during said day. That during the forenoon of said day plaintiff W. A. Ross wired C. L. Barker, plaintiffs' agent at Fall River, Mass., requesting best price obtainable at that point for said 80 bales of cotton. That, in reply to said request, the said C. L. Barker delivered to defendant's agent at Fall River, Mass., the following telegram:

" 'W. A. Ross, Ladonia, Texas. Am offered firm nineteen fifty for eighty KOTB landed Providence, Answer quick.'

"That said message, as transmitted and delivered to plaintiff Ross at Ladonia, Tex., read, instead of 'nineteen fifty,' 'fifteen forty.' I find that plaintiffs paid the defendant, or agreed to pay the defendant, for sending said message, the usual and customary charges for unrepeated messages.

"I find that after the receipt of the above message by plaintiff Ross other messages were exchanged between him and the said C. L. Barker at Fall River, in which it was shown both to plaintiffs Ross and Barker that the defendant had made an error in the transmission of said message. I find that the plaintiff Ross upon receipt of this information secured an extension of the option on said 80 bales of cot-

ton until November 11, 1921. That the owner of said cotton agreed to give plaintiffs an extension of the option on said (cotton) during the following day, to wit, November 11, 1921. That the owner of said cotton agreed to sell the same to plaintiffs for 18.75 cents per pound landed at Providence, R. I., provided plaintiffs exercised the option and purchased the cotton during the day of November 11, 1921. I further find that as soon as plaintiffs obtained the extension of said option plaintiff Ross delivered, on November 11, 1921, to the defendant's agent at Ladonia, Tex., the following telegram:

" 'C. L. Barker, Fall River, Mass. Now able to close deal at price mentioned. Can you confirm to-night or before market opens to-morrow?'

"That said message, as transmitted and delivered to the said C. L. Barker, plaintiffs' agent, at Fall River, Mass., read: 'Not able to close deal at price mentioned,' etc., instead of 'Now able to close deal at price mentioned,' etc. That plaintiffs paid the defendant, or agreed to pay the defendant, the usual and customary charges for unrepeated messages for handling and sending said message.

"I find that, by reason of the mistakes in said telegrams made by the defendant's agents, plaintiffs were unable to exercise their option and to purchase the cotton at the price stipulated in said option contract.

"I find that, if said messages had been properly and correctly transmitted, plaintiffs would have exercised their option, would have purchased said cotton at the price fixed in said option agreement, and would have sold the same on the market at Fall River, Mass., at a net profit of three-fourths of a cent per pound, or an aggregate net profit of $300.

"I find that the damages sustained by plaintiffs amounted to the sum of $300, and that the negligence on the part of defendant's servants and agents in handling, transmitting, and sending said messages was the proximate cause of plaintiffs' said damages. I find that defendant's agents and servants, were guilty of gross negligence in handling, transmitting, and sending each of said messages.

"I find that each of said telegrams above set out contained, among other things, the following provisions on the back thereof:

" 'To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed between the sender of the message and this company, as follows:

" '(1) The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery, of an unrepeated message, beyond fifty times the sum received for sending the same, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines; nor for errors in cipher or obscure messages.

" '(2) In any event the company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the nondelivery, of this message, whether caused by the negligence of its servants or otherwise, beyond the sum of $50, at which amount this message is hereby valued, unless a greater value is stated in writing thereon at the time the message is offered to the company for transmission, and an additional sum paid or agreed to be paid based on such value equal to one-tenth of 1 per cent. thereof.'

" '(6) The company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within 60 days after the message is filed with the company for transmission.'

"I find that plaintiffs did not present in writing or file with the defendant their claim for damages on the Massachusetts message within 60 days or the Texas message within 95 days after the messages above set out were filed with the company for transmission, but I find that the defendant, by the acts and statements of its local manager at Fall River, Mass., waived the filing of said claim in writing by the plaintiffs."

The evidence pertaining to the waiver or estoppel was, as testified to by C. L. Barker:

"I went to the manager of the office (at Fall River) as soon as I got the message. I was personally acquainted with him. I indicated to him the result of the error in transmitting the message. He said nothing. When the message reached me 'not able to close deal,' I went to Mr. Breslin, the manager, and said, 'This is evidently a mistake; it means nothing, and you had better get the message repeated.' He did it. I then afterwards went to see him, and told him we had lost the sale, and would hold the Western Union responsible for it. I used the words, 'We expect to go to the mat with you.' He said, 'I am sure that will not be necessary, because it is a good claim, and I am satisfied they will settle it without anything of that sort.' He asked me to take no steps to bring suit on the claim, as it would be settled without suit, and did not take further action in the matter."

It was proven that at a general session of the Interstate Commerce Commission held in Washington, D. C., on May 3, 1921, an order was issued respecting limitation of liability in connection with the transmission of messages, applicable to the Western Union Telegraph Company. The attorneys agreed as follows:

"The filing, posting, and publishing of the tariffs and rates by the defendant company with the Interstate Commerce Commission is hereby admitted."

The order of the Commission required the telegraph company to establish, as it is agreed it did do, and maintain rules and provisions which shall limit liability for errors or delays in the transmission or delivery or for nondelivery of interstate messages to amounts not less than $500 for each such message received for transmission

at the unrepeated message rate. The rules and provisions filed further provided, as to "messages filed in Texas for transmission to another state," as follows:

"The company shall not be liable for damages or statutory penalties in any case where the claim is not presented in writing within 95 days after the message is filed with the company for transmission."

Flippen & Miller, of Dallas, for appellant.

Clark & Sweeten, of Greenville, for appellees.

LEVY, J. (after stating the facts as above). The proposition of appellant in effect presents the point in view that appellees cannot excuse their failure to comply with the stipulation in the telegrams providing for the filing of claims in writing within 60 and 95 days, upon the ground that that provision was waived by the conduct of the agent of the telegraph company. The limitation of liability, formally adopted and filed and approved by the Interstate Commerce Commission pursuant to the federal act, became the lawful condition upon which the messages were received and sent. It was not in the nature or legal statutes of a simple contract of the parties, subject to their will and abrogation, unaffected by public concern or law. Consequently the company could not waive the condition, and estoppel would be unavailing. Kerns v. W. U. Tel. Co. (Mo. App.) 198 S. W. 1132; W. U. Tel. Co. v. Esteve Bros. & Co., 256 U. S. 566, 41 S. Ct. 584, 65 L. Ed. 1094; Georgia, F. & A. R. Co., v. Blish Milling Co., 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948.

In the case of Esteve Bros. & Co., supra, it is stated:

"The lawful rate having been established, the company was by the provisions of section 3 of the act to regulate commerce prohibited from granting to any one an undue preference or advantage over the public generally. For, as stated in Postal Telegraph-Cable Co. v. Warren-Godwin Lumber Co., supra (251 U. S.) 30. the 'act of 1910 was designed to and did subject such companies as to their interstate business to the rule of equality and uniformity of rates.' If the general public upon paying the rate for an unrepeated message accepted substantially the risk of error involved in transmitting the message, the company could not, without granting an undue preference or advantage extend different treatment to the plaintiffs here. The limitation of liability was an inherent part of the rate. The company could no more depart from it than it could depart from the amount charged for the service rendered."

Further, as stated in the case of Blish Milling Co., supra, in speaking of a notice of claim in the shipment of goods:

"It is urged, however, that the carrier in making the misdelivery converted the flour and thus abandoned the contract. But the parties could not waive the terms of the contract under which the shipment was made pursuant to the federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed."

The judgment is reversed, and judgment is here entered in favor of the appellant, with costs of the trial court and of appeal.