## KOMATZ CONSTRUCTION, INC. v. WESTERN UNION TELEGRAPH COMPANY.*

186 N. W. (2d) 691.

April 16, 1971—No. 42433.

---

[1] See, Hanson v. Ford Motor Co. (8 Cir.) 278 F. (2d) 586, 590, as to the elements of an action for fraud.

* Certiorari denied, —— U. S. ——, —— S. Ct. ——, —— L. ed. (2d) ——, October 12, 1971.

130

*Gault, MacKenzie, Gustafson & Litynski* and *W. M. Gustafson,* for appellant.

*Blethen, Ogle, Gage & Krause* and *Arthur H. Ogle,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Kelly, Frank T. Gallagher, and Rosengren, JJ.

KELLY, JUSTICE.

This is an appeal from summary judgment limiting to $500 the amount of damages sustained by plaintiff as a result of defendant's delay in transmitting a message.

At 9:14 a. m., plaintiff's employee sent a telegram from St. Peter, Minnesota, to Baudette, Minnesota, using defendant's facilities. The message was not written on a Western Union blank but was typed on a letterhead of plaintiff. Plaintiff's employee informed defendant's agent that the message must be in Baudette by 2 p. m. of that same day.

The telegram was transmitted from St. Peter to the following cities: Mankato; Minneapolis; Detroit, Michigan; Toronto, Ontario; Winnipeg, Manitoba; Fort Frances, Ontario; and finally to Baudette. Defendant maintained no telegraph circuits from a Minnesota point to Baudette and sent such telegrams through Canada. Thus, the customary route was used for the message involved here. The telegram was picked up at 4 p. m. on that same day. Due to the delay, plaintiff admittedly suffered more than $500 in damages.

The defendant had filed its tariff with the Federal Communications Commission in accordance with the laws of the United States and the rules and regulations of the commission. The tariff includes limitations of liability as set forth on the back of defendant's standard message form, the relevant portion of which provides:

"ALL MESSAGES TAKEN BY THIS COMPANY ARE SUBJECT TO THE FOLLOWING TERMS:

"To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such,

in consideration whereof it is agreed between the sender of the message and the Telegraph Company as follows:

"1. The Telegraph Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the un-repeated message rate beyond the sum of five hundred dollars; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the repeated-message rate beyond the sum of five thousand dollars, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines.

"2. In any event the Telegraph Company shall not be liable for damages for mistakes or delays in the transmission or delivery, or for the non-delivery, of any message, whether caused by the negligence of its servants or otherwise, beyond the actual loss, not exceeding in any event the sum of five thousand dollars, at which amount the sender of each message represents that the message is valued, unless a greater value is stated in writing by the sender thereof at the time the message is tendered for transmission, and unless the repeated-message rate is paid or agreed to be paid and an additional charge equal to one-tenth of one per cent of the amount by which such valuation shall exceed five thousand dollars."

Neither plaintiff nor its employee was aware of any limitations of liability. No request was made for a valued message or repeated message and as a result the telegram was transmitted at the unrepeated message rate.

Plaintiff instituted this action against defendant for damages incurred because the telegram was delayed. Defendant made a motion for summary judgment to limit plaintiff, as a matter of law, to a maximum recovery of $500. The trial court granted the motion and judgment was entered limiting the liability of defendant to a maximum of $500.

The issue on appeal is whether the limitation of liability for mistakes or delay in the transmission of an unrepeated interstate

message in the tariff filed by defendant applies to plaintiff's cause of action and limits the recovery to $500.

The message in this case was sent from one point to another, both locations in Minnesota. However, it was routed through another state and a foreign country and is therefore interstate commerce under the holding of Western Union Telegraph Co. v. Speight, 254 U. S. 17, 41 S. Ct. 11, 65 L. ed. 104 (1920).

Plaintiff contends that the law of Minnesota, not Federal law, governs in the instant case and cites Minn. St. 237.44 [1] and Dettis v. Western Union Telegraph Co. 141 Minn. 361, 170 N. W. 334 (1919). At the time Dettis was decided, there were no United States Supreme Court decisions clearly indicating that the Federal government had preempted the field of law governing the liability of telegraph companies for delays, errors, omissions and nondelivery of interstate messages. This court understandably applied state law, citing an Interstate Commerce Commission ruling that telegraph companies were not required to file tariffs for interstate messages and concluding that, inasmuch as such filings were voluntary, no notice of limitations of liability contained in the tariffs was to be imputed to the sender of an interstate message. [2] However, in Siats v. Western Union Telegraph

_____

[1] Minn. St. 237.44 provides as follows: "If any person or corporation owning or operating a telegraph line wholly or partly within the state shall fail to transmit any message within a reasonable time, or to exercise due diligence to that end, after its reception, or shall fail to deliver any message to the party to whom it is addressed within a reasonable time after its arrival at the place of destination, he or it shall be liable in a civil action at the suit of the party injured for all damages sustained by reason of such neglect or omission. The company delivering the message shall state plainly thereon the exact time when it was received at the original point for transmission."

[2] In Lind v. Western Union Telegraph Co. 173 Minn. 424, 217 N. W. 486 (1928), the court recognized the validity of limitations of liability contained in tariffs filed by telegraph companies with the Interstate Commerce Commission as to all persons sending foreign or interstate messages over their lines, but did not apply the limitation because the company was unable to prove that the limitations were contained in any tariff filed by it with the commission.

Co. 251 Minn. 412, 88 N. W. (2d) 199 (1958), this court acknowledged that the Federal government had indeed preempted this field of law in these words:

"* * * [I]t should be observed that on June 18, 1910, Congress amended the Interstate Commerce Act, 36 Stat. 539, 545, so as to place interstate telegraphic communication under the jurisdiction of the Interstate Commerce Commission. Such jurisdiction was transferred to the Federal Communications Commission with the enactment of the Communications Act of 1934, 47 USCA, § 151, et seq. Ever since Federal control was thus established, telegraph companies, as to interstate transactions, have been subject to a national and uniform rule of law. Notwithstanding Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S. Ct. 817, 82 L. ed. 1188, interstate message transactions are still governed by Federal law to the exclusion of conflicting state law; and this means that they are governed not merely by the provisions of Federal statutes but by 'Federal common law' as well." 251 Minn. 414, 88 N. W. (2d) 202.

The following provisions of the Communications Act of 1934 are the foundation for the proposition that the limitations of liability contained in a telegraph company's tariff for interstate messages on file with the Federal Communications Commission are controlling as a matter of law with respect to the amount plaintiff may recover, the theory being that if damages were to be paid in excess thereof that the claimant would be given a "preference or advantage," and the company would be receiving "less or different compensation for such communication * * * than the charges specified in the schedule then in effect."

Section 202, 48 Stat. 1070, as amended by 74 Stat. 888, 47 USCA, § 202, provides in part:

"(a)  It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in con-

nection with like communication service, directly or indirectly, by any means or device, *or to make or give any undue or unreasonable preference or advantage to any particular person,* class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

"(b)   Charges or services, whenever referred to in this chapter include charges for, or services in connection with, the use of common carrier lines of communication, whether derived from wire or radio facilities * * * or incidental to radio communication of any kind." (Italics supplied.)

Section 203(c), 48 Stat. 1071, 47 USCA, § 203(c), provides in part with regard to tariffs filed with the Federal Communications Commission:

"* * * [A]nd no carrier shall (1) *charge, demand, collect, or receive a greater or less or different compensation for such communication, or for any service in connection therewith, between the points named in any such schedule than the charges specified in the schedule then in effect,* or (2) refund or remit by any means or device any portion of the charges so specified, or (3) extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule." (Italics supplied.)

The limitation of liability for an unrepeated message became effective when defendant's tariff was filed under the above sections, and defendant by law must adhere to this limitation. In Western Union Telegraph Co. v. Esteve Brothers & Co. 256 U. S. 566, 41 S. Ct. 584, 65 L. ed. 1094 (1921), the court held that recovery against Western Union for an error in an unrepeated cable message resulting in a substantial loss to Esteve Brothers was limited to the toll charges for the cable by Western Union as provided in the tariff then on file with the Interstate Commerce Commission. In Esteve the limitations of liability were

not expressed on the blank used nor did the sender know of their adoption or filing. The court in Esteve stated:

"The lawful rate having been established, the company was by the provisions of § 3 of the Act to Regulate Commerce prohibited from granting to anyone an undue preference or advantage over the public generally. For, as stated in Postal Telegraph-Cable Co. v. Warren-Godwin Lumber Co., supra, 30, the 'Act of 1910 was designed to and did subject such companies as to their interstate business to the rule of equality and uniformity of rates.' If the general public upon paying the rate for an unrepeated message accepted substantially the risk of error involved in transmitting the message, the company could not, without granting an undue preference or advantage extend different treatment to the plaintiffs here. The limitation of liability was an inherent part of the rate. The company could no more depart from it than it could depart from the amount charged for the service rendered.

"The Act of 1910 introduced a new principle into the legal relations of the telegraph companies with their patrons which dominated and modified the principles previously governing them. Before the act the companies had a common-law liability from which they might or might not extricate themselves according to views of policy prevailing in the several States. Thereafter, for all messages sent in interstate or foreign commerce, the outstanding consideration became that of uniformity and equality of rates. Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not as before a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed. Assent to the terms of the rate was rendered immaterial, because when the rate is used, dissent is without effect." 256 U. S. 571, 41 S. Ct. 586, 65 L. ed. 1097.

The fact that the message was not on a Western Union form containing the limitations of liability is a matter of no consequence. Under the fundamentals of Esteve, the senders of interstate messages are bound as a matter of law by the limitations of liability without regard to their assent because the messages are sent at a lawfully established rate which could not be departed from without creating an undue preference or advantage in violation of the statutes.

Plaintiff contends that the limitations of liability should not apply to delays in interstate messages by assuming a repeated message would not guard against delay, only mistakes. If we accept this assumption as being correct, it is of no help to plaintiff's claim.[3] First of all, the tariff on file specifically limits liability for each type of message used and covers specifically delays, mistakes, and nondelivery. The United States Supreme Court reviewed the liability of telegraph companies in Western Union Telegraph Co. v. Czizek, 264 U. S. 281, 44 S. Ct. 328, 68 L. ed. 682 (1924). In Czizek, the "telegram was an unrepeated message of the class known as a night letter and was not specially valued or paid for upon a value in excess of $50." 264 U. S. 283, 44 S. Ct. 329, 68 L. ed. 684. The tariff of Western Union then on file and approved by the Interstate Commerce Commission included the form used in that case, which provided:

"* * * The Company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any UN-REPEATED telegram, beyond the amount received for sending the same. * * * 2. In any event the Company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the nondelivery, of this telegram, whether caused by the negligence of its servants or otherwise, beyond the sum of FIFTY DOLLARS, at which amount this telegram is hereby

---

[3] We do not concede it is correct, but if correct, it would be of no consequence. See, Nolte Brass Foundry Co. v. Western Union Telegraph Co. (S. D. Ohio) 38 F. (2d) 838 (1930).

valued, unless a greater value is stated in writing hereon at the time the telegram is offered to the Company for transmission, and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent. thereof." 264 U. S. 283, 44 S. Ct. 328, 68 L. ed. 684.

The court held that the second provision applied although the message was never transmitted due to the inadvertence of a receiving clerk followed by subsequent mistaken assurances that it had been sent.[4] If we should assume that a repeated message could not guard against delays, we most certainly should assume that such a message would not guard against nondelivery.

If, as held in Czizek, the limitations of liability are to apply to nondelivery, it would strain all logic and reasoning to say that the same should not apply to a delay in delivery.

Plaintiff also contends that the route used for the message was unreasonable, and that under Western Union Telegraph Co. v. Speight, *supra,* the route of the message must be reasonable, quoting the following language from that case:

---

[4] The court in Czizek explained its choice of the second provision by this somewhat cryptic statement: "We have not adverted to the first clause of the exemptions, limiting liability to the amount received for sending the message. Obviously this has a narrower scope than the valuation clause and we should hesitate to hold that it exonerated the defendant in this case. Unrepeated Message Case, 61 I. C. C. 541." 264 U. S. 285, 44 S. Ct. 329, 68 L. ed. 685. This unrepeated message case was decided in 1921 after the cause of action in Czizek arose but before the opinion thereon was rendered.

Plaintiff contends that this language supports the proposition that the limitations of liability do not apply to delays in transmission when a repetition of the message would not have prevented the loss. However, Czizek has not inhibited the courts generally from holding that the limitations of liability do apply to cases involving defaults which repetition would not have prevented. Western Union Telegraph Co. v. Abbott Supply Co. 45 Del. 345, 74 A. (2d) 77, 20 A. L. R. (2d) 754, § 10, p. 778 (1950). The court in Abbott attempts to explain the above quotation from Czizek.

"If the mode of transmission adopted had been unreasonable as against the plaintiff, a different question would arise, but in that case the liability, if it existed, would not be a liability for an intrastate transaction that never took place but for the unwarranted conduct and the resulting loss." 254 U. S. 19, 41 S. Ct. 11, 65 L. ed. 105.

This quoted language results in a circular argument. Assuming the routing in the instant case was unreasonable and that "the liability, if it existed, would not be a liability for an intrastate transaction that never took place," plaintiff here would have no relief under state law. If the liability was for the "unwarranted conduct and resulting loss" under Federal law, it has to be admitted that the result of the unwarranted conduct was a delay in transmission for which liability is specifically limited in defendant's tariff to $500 for unrepeated messages. This limitation of liability is the lawful condition upon which an unrepeated message may be sent under defendant's filed tariff. Western Union Telegraph Co. v. Priester, 276 U. S. 252, 48 S. Ct. 234, 72 L. ed. 555 (1928). Whatever the meaning of the language quoted from Speight, it cannot now be a persuasive argument for the plaintiff's cause in the light of the following from Priester:

"* * * By § 1 of the Interstate Commerce Act it is provided that subject to the approval of the Commission messages received by telegraph companies for transmission may be classified into 'repeated, unrepeated . . . and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages.' The established rates for unrepeated messages thus became the lawful rates and the attendant limitation of liability became the lawful condition upon which messages might be sent. * * * What had previously been a matter of common law liability, with such contractual restrictions as the states might permit, then became the subject of federal legislation to secure reasonable and just rates for all without undue preference

or advantage to any. Since that end is attainable only by adherence to the approved rate, based upon an authorized classification, that rate 'represents the whole duty and the whole liability of the company.' * * * Such being the basis of liability, we do not perceive any adequate ground upon which it may be enlarged merely by the application of a 'vituperative epithet' to the admitted fault of the petitioner. * * * For if it be assumed that we can weigh and measure degrees of negligence and that a public service company may not by contract alone limit its liability for gross negligence, so-called, nevertheless we may not disregard a lawful exercise of the regulatory power which has made no distinction between degrees of negligence, nor may we, upon any theory of public policy, annex to the rate as made conditions affecting its uniformity and equality." (Citations omitted.) 276 U. S. 259, 48 S. Ct. 235, 72 L. ed. 565.

Even if it were gross negligence for the defendant to choose such a route, the plaintiff could not recover since one of the fundamentals of Priester is that the limitations of liability in an appropriate case apply even where gross negligence by the telegraph company is proved. Assuming, without deciding, that the routing in the instant case was unreasonable and contributed to the delay, the plaintiff is nonetheless bound by the limitation of liability, for we may not upon any theory of public policy annex to the message rates conditions affecting their uniformity and equality.

Plaintiff claims that the defendant, because of certain actions and omissions on its part and on the part of its agent, is estopped from asserting the limitations of liability of its filed tariff. It was held in Postal Telegraph-Cable Co. v. Howe, 46 Nev. 239, 211 P. 358 (1923), that estoppel cannot be asserted to prevent telegraph companies from relying on the limitations of liability for the reason that this would upset the uniformity and equality of treatment demanded by the Federal law. Also, in Western Union Telegraph Co. v. Woods (Tex. Civ. App.) 266 S. W. 179 (1924), it was held that a telegraph company could not waive the conditions contained in the limitations of liability it had filed

with the Interstate Commerce Commission and that estoppel would be unavailing.

It appears to this court that not only would the application of an estoppel violate the requirement of uniformity and equality of rates, but it would result in the giving of a preference or advantage. §§ 202(a), 203(c) of the Communications Act of 1934, 48 Stat. 1070, 1071, 47 USCA, §§ 202(a), 203(c).

The plaintiff also asserts that §§ 206 and 207 of the Communications Act of 1934, 48 Stat. 1072, 1073, 47 USCA, §§ 206 and 207, create a cause of action in excess of tariff limitations. Section 206 reads as follows:

"In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

Section 207 reads as follows:

"Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies."

The arguments advanced by plaintiff as to the effect of §§ 206 and 207 were also presented in Stanely v. Western Union Telegraph Co. (S. D. Fla.) 23 F. Supp. 674 (1938). The court there

held that a claim for damages for nondelivery of a message was not a claim for "violation of the statute."

In Ivy Broadcasting Co. v. American T. & T. Co. (2 Cir. 1968) 391 F. (2d) 486, plaintiff claimed negligence and breach of contract against defendant company. The court's opinion clearly indicates that §§ 206 and 207 of the Communications Act of 1934 do not grant a remedy for negligence or breach of contract in the rendition of communication services and that recovery under these sections may be had only for specific violations of the act.[5]

The damages claimed in the instant case were not caused by a violation of the Communications Act of 1934 and consequently these sections have no application to this case.

Plaintiff asserted in oral argument before this court that the limitations of liability in defendant's tariff should not apply on the ground that defendant had not complied with requirements for posting under § 203(a) of the act, 48 Stat. 1070, 47 USCA, § 203(a) and the administrative rulings thereunder contained in 47 CFR 61 to 72. This issue was not raised by the pleadings or litigated by the court below and is therefore not subject to review. Schlecht v. Schlecht, 168 Minn. 168, 209 N. W. 883 (1926).

Affirmed.

---

[5] The language of §§ 206 and 207 of the Federal Communication Act is substantially the same as that of §§ 8 and 9 of the Interstate Commerce Act, 24 Stat. 384 and 382, as amended, 49 USCA, §§ 8 and 9; thus decisions interpreting §§ 8 and 9 of the latter act are helpful in determining the correct application of the very similar provisions involved in this case. It has been held that §§ 8 and 9 of the Interstate Commerce Act apply only to direct violations of the act and not to injury to goods in transit, Olcovich v. Grand Trunk Ry. Co. 20 Cal. App. 349, 129 P. 290 (1912); or for the loss of goods, Atlantic Coastline R. Co. v. Riverside Mills, 219 U. S. 186, 31 S. Ct. 164, 55 L. ed. 167, 31 L. R. A. (N. S.) 7 (1911); or damages caused by failure to deliver goods, Galveston, Harrisburg & San Antonio Ry. Co. v. Wallace, 223 U. S. 481, 32 S. Ct. 205, 56 L. ed. 516 (1912).