## CHARLES B. WOODLEY v. CAROLINA TELEPHONE AND TELEGRAPH COMPANY.

(Filed 15 October, 1913.)

### 1. Telephones—Public-service Corporations—Duties Required—Uniform Rules—Discrimination.

A telephone company is a public-service corporation, and as such takes and holds its charter subject to the obligation of rendering its services at uniform and reasonable rates and without discrimination, and of entering into such contracts only as will enable it to perform its chartered duties, whether such contract is evidenced by municipal ordinance or by agreement between the parties.

### 2. Same—Prepayment for Services.

As a public-service corporation, a telephone company may make such just and needful rules and regulations as required for the proper performance of their statutory duties and in reasonable furtherance of the company's general business; and a rule requiring all of its subscribers, without discrimination, to pay its uniform rates established for its service for a reasonable time in advance, is valid and enforcible, and prepayment for the period of one month is a reasonable requirement.

### 3. Same—Injunction.

Where a telephone company had required its subscribers to pay for the use of its service at the end of each month, and found by experience that it lost money by the nonpayment by its subscribers for services rendered, and had put in effect a rule requiring prepayment for such services a month in advance, to which all of its subscribers conformed with the exception of the plaintiff, the service for whom had been accordingly discontinued, an injunction will not be granted, in his action, restraining the company from discontinuing his service, for such would be an unlawful discrimination in his favor against the other users of the telephone service.

### 4. Telephones — Contracts—Reasonable Regulations—Parol Agreements—Notice—Determinable at Will.

A telephone company had in force a rule requiring its subscribers to pay a month in advance for services to be rendered, and the plaintiff, a subscriber, refused to sign the contract with this provision printed therein, and erased the same therefrom, and at the time signed the contract with the verbal understanding that he would pay at the end of each month: *Held*, (1) the

WOODLEY *v.* TELEPHONE CO.

erasure would leave the matter indeterminate, and subject to further regulation by the company; (2) should the oral agreement be held valid, it would ordinarily be determinable at the will of either party, upon reasonable notice.

## 5. Same—Prepayment for Services.

A written contract with a telephone company made by a subscriber, provided in effect that it should continue for a year, and thereafter for thirty days after written notice given of discontinuance, with the further condition, "that for any reason which appears to the company sufficient, the company may at its option terminate the contract and remove the instrument": *Held,* there was nothing upon the face of the contract to restrain the company from the enforcement of a rule uniformly requiring a prepayment for a month's subscription by the users of the service, certainly after having found the rule necessary from its experience, and giving reasonable notice thereof.

## 6. Telephones—Municipal Ordinances—Contracts—Security—Regulations—Prepayment for Services.

It is held in this case that a town ordinance providing that a certain telephone company "may require" its subscribers "to keep and pay the rental on such telephones for the period of twelve months and as a guarantee therefor may require them to give bond as "an assurance of the faithful performance of the terms of the contract," was a protection to the company against the initial expense of installing the telephone at the beginning of the service, and in no wise interfered with the company in its right to make a reasonable rule requiring prepayment a month in advance by its patrons.

## 7. Telephones—Reasonable Rules—Prepayment for Services.

In order to a valid waiver, there must be an agreement founded on consideration or some element of estoppel. Hence, a telephone company does not waive its right to put into effect and enforce a reasonable rule requiring its patrons to pay in advance for its services rendered by having previously only required them, for a year or more, to pay at the end of each month.

## 8. Telephones—Statutory Duties—Waiver.

A telephone company, as a public-service corporation, may not waive by its conduct its duty to properly perform its statutory duties or those requiring that it render its service at reasonable rates and without discrimination.

**9. Telephones—Reasonable Rules—Prepayment—Tender.**

A tender of payment by the subscriber to a telephone company for the continuance of the service for a few days, made after the instrument had been removed for his failure to comply with a reasonable and uniform rule requiring the prepayment for a month, is immaterial in his action seeking an injunction against the discontinuance of the service, upon the ground that the rule was unreasonable.

BROWN, J., did not sit.

APPEAL by defendant from *O. H. Allen, J.,* from LENOIR.

Civil action, on question of preliminary injunction, heard at chambers in the city of Kinston on 28 July, 1913.

The action was brought to recover damages of defendant for severing plaintiff's telephone connection in the city of Kinston and to compel defendant to restore same. Defendant justified on the ground that plaintiff wrongfully refused to pay the rates monthly in advance, and plaintiff contended that the rates were only due at the end of each month and that defendant had no lawful excuse for its conduct. The court, on the facts as presented, being of opinion with the plaintiff, entered judgment restraining defendant till the hearing and compelling it to restore connection pending the controversy. Defendant having duly excepted, appealed.

*G. V. Cowper for plaintiff.*
*Y. T. Ormond, T. C. Wooten, and G. M. T. Fountain & Son for defendant.*

HOKE, J. Our decisions are to the effect that these public-service corporations, including telegraph and telephone companies, take and hold their charters subject to the obligation of rendering services at uniform and reasonable rates and without discrimination, and further, that they have no right to make or continue in the performance of a contract "which renders them unable to perform the duties imposed upon them by their charter," and whether such contract is evidenced by municipal ordinance or by agreement between the parties. *Telegraph Co. v. Telephone Co.,* 159 N. C., 9; *Horner v. Water Co.,* 153 N. C., 535; *Griffin v. Water Co.,* 122 N. C., 206. It is also

recognized that those companies, subject to the provisions of their charter and the general law, may make such just and needful rules and regulations as are required for the proper performance of their statutory duties and in reasonable further-ance of the company's general business; and, in reference to companies of this character, that a rule requiring payment of established rates in advance for a limited period will be con-sidered as reasonable and valid, and we are of opinion that in case of telephone companies the term of one month comes well within the principle. *Washington v. Independent Tel. Co.,* 59 Wash., 156; 37 Cyc., p. 1619.

In the present case, on a perusal of the facts in evidence, it appears that defendant company, duly incorporated, desiring to install and operate a new and efficient telephone system for the city of Kinston, was granted the privilege by ordinance of the city and had printed a form of contract for general use requiring payment of monthly rates in advance. That for a year or more after commencing operations the company, desir-ing to oblige its patrons as far as possible, did not insist on prepayment, collecting very generally at the end of each month; but having ascertained by trial that the loss in collections by this method was so great that the company would not be able to "properly maintain its system and give efficient and satisfactory service to its patrons, it was determined to enforce the feature of the contract requiring payment in advance," and that it was necessary to do this to properly perform its duties. That by the first of January, 1913, a large portion of the subscribers had acquiesced in the requirement, and by May of this year all of the six hundred subscribers had done so but eleven, and since that time all of these eleven except the plaintiff.

In reference to the various notices given plaintiff in this con-nection, the affidavit of defendant's general manager made aver-ment as follows: "That the said plaintiff was notified in Janu-ary that unless he complied with this rule of the company his phone would be disconnected. That he was given said notice several times in the month of May, and on the 7th of May he was notified that if he had any special contract that did not

require him to pay his rentals in advance, that the company hereby cancels same, and unless he paid his rentals in advance by the 15th of June, service would be discontinued. That plaintiff was notified in January, 1913, that he must comply with the rules of the company to pay in advance. He stated to affiant that the company had no right to adopt the rule; he did not object to the same, however, but that it was a matter of finance with him, and that he hoped to be able to pay in advance soon. That thereafter every effort was made to induce said plaintiff to comply with said rule and regulation, and upon his persistent failure and refusal to do so, his phone was disconnected and service was discontinued on 16 June, 1913."

We find no substantial denial in the record of the facts relevant to this phase of the inquiry, and it will thus sufficiently appear that for defendant to defer to plaintiff's position in this matter would be an unlawful discrimination in plaintiff's favor on the part of the company and in violation of its statutory duties as a public-service corporation. Applying the legal principles, as heretofore stated, we are of opinion that on the facts as they now appear of record, the defendant company was well within its rights when it severed plaintiff's connection for nonpayment of monthly dues.

While this disposes of the present appeal, it may be well to refer to some of the positions urged in support of plaintiff's claim. It is contended that he is entitled to present relief by reason of certain averments in his own affidavit to the effect that when the contract of subscription was presented to him for his signature of date 18 October, 1910, stating the rates "at $36 per annum in equal payments of $3 each monthly in advance during the continuation of the contract, etc., plaintiff declined to sign same as written, and did not sign till he had erased the words "monthly in advance," and further, that there was an oral agreement at this time that plaintiff was to pay at the end of each month. So far as the erasure is concerned, this would seem to leave the matter indeterminate and subject to future regulation by the company (*Hermon v. Water Co., supra*), and as to the alleged oral contract, even if the same were made and valid, it being indefinite as to time, would ordi-

narily be determinable at the will of either party, certainly on giving reasonable notice (*Solomon v. Sewerage Co.,* 142 N. C., pp. 439-445), and if considered a part of the written subscription and controlled by its terms, this contains specific stipulation, "That this contract shall continue for one year from 19 October, 1910, and thereafter until the expiration of thirty days after written notice shall be given by the subscriber of a desire to cancel this agreement, unless the same shall be terminated by the company as specified in the conditions aforesaid"; and one of these conditions is in part as follows: "That for any reason which appears to the company sufficient, the company may at its option terminate the contract and remove the instrument." On the facts, therefore, there is nothing in the contract itself restraining the company from making the change and requiring payment on giving proper notice of the monthly rates in advance.

Again, it is insisted that this collection of rates in advance is prohibited by the municipal ordinance granting defendant the privilege of operating its system in the city of Kinston. Section 13 of the ordinance upon which plaintiff relies, after requiring of defendant service for all citizens of good standing who apply for it, concludes as follows: "That the said Carolina Telephone and Telegraph Company may require such person or persons to keep and pay the rental on such telephones for a period of twelve months, and to guarantee the payment of said rental for said period, the said company having the right to require the said party to give bond in the sum of fifty dollars ($50) as an assurance of the faithful performance of the terms of said contract." This, to our mind, in no way interferes with the right claimed by defendant, but, as its terms clearly import, was only intended as a protection to the company against the initial expense of installing the telephone at the beginning of the service. It is further argued that the company has waived the right in question by not having enforced it for a year or so after making the regulation; but such a position cannot at all be maintained. In order to a valid waiver, there must be an agreement founded on consideration, or there must be some element of estoppel. Neither is present

here. It was only a case of temporary acquiescence in a different method on the part of the company, and from a disposition to oblige its patrons, and there was nothing to prevent defendant from enforcing its regulation when it was ascertained by trial that the business could not be satisfactorily conducted in the other way. Apart from this, the doctrine of waiver is subject to the control of public policy, and a public-service corporation no more by waiver than by, contract is allowed to put itself in a position which prevents the proper performance of its statutory duties and affording its service at reasonable rates and without discrimination amongst its patrons. 29 A. and E., pp. 1097 and 1107.

The suggestion of a tender by plaintiff for a few days service and demand of reinstatement is without merit.

The plaintiff was at the time insisting on his right to pay at the end of each month, and the tender was not in accord with a valid regulation of the company.

We are of opinion that, on the facts as they now appear, the plaintiff has shown no right to a preliminary injunction, and the judgment of the lower court must be

Reversed.

BROWN, J., did not sit.