**LEWIS et al. v. POTOMAC ELECTRIC POW-
ER CO. et al.**

No 5661.

Court of Appeals of the District of Columbia.
Argued Feb. 14, 1933.
Decided March 27, 1933.

Guy Mason, Richard E. Shands, and Cornelius H. Bull, all of Washington, D. C., for appellants.

S. R. Bowen and John S. Barbour, both of Washington, D. C., for appellee Potomac Electric Power Co.

Richmond B. Keech, People's Counsel, of Washington, D. C., intervener.

William W. Bride and William A. Roberts, both of Washington, D. C., for intervener Public Utilities Commission.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

The appellants are trustees of the owners of a large store and office building in Washington city. We shall call them appellant. The offices and stores are rented to various tenants, and the building is equipped with the necessary apparatus to receive electric current. The appellee Potomac Electric Power Company is a public utility, and as such is subject to the provisions of the law creating the Public Utilities Commission for the

District of Columbia. Act March 4, 1913, 37 Stat. 974–996, § 8, title 26, § 1 et seq., D. C. Code 1929.

The power company is engaged in and since March 1, 1927, has been furnishing electric current to appellant at wholesale rates, which appellant has regularly paid for and then redistributed to his tenants under contracts entered into by each of them with appellant through which the tenants paid for the exact quantity of current which each consumed at the rate charged by the power company to its retail customers. In October, 1929, the power company declined to continue this arrangement and notified appellant it would furnish electric current only on condition that appellant would not thereafter resell the same to the tenants of his building on a measured basis. The object which the power company had in view was to charge appellant for the current consumed by him in the operation of his elevators, lighting of his halls, and otherwise, on the wholesale rate basis and to bill and collect from each of his tenants on the retail rate basis charged other similar users. The rule on which the power company acted was approved by the Public Utilities Commission of the District of Columbia December 31, 1928, and required each user of current to sign a contract in part as follows:

"It is expressly understood and agreed that electric service furnished to the consumer shall be for his (her or their) own use, and may not be remetered (or submetered) by the consumer for the purpose of selling electric service to another or others."

Appellant declined to enter into a contract with the power company consonant with its rule, and the company threatened to cut off the current from appellant's building. It was to prevent this that appellant applied to the lower court for an injunction.

The question which we have to decide is whether the power company may adopt a rule not to furnish electric current to a property owner unless the latter will agree not to remeter and resell the current to his tenants. Appellant maintains that the electric current when sold and delivered is like other property and as such subject to the purchaser's exclusive control and disposal, and likewise that the right to resell electricity which has been delivered and paid for is a property right protected by the Fifth and Fourteenth Amendments to the Constitution of the United States. On the other hand, the power company insists that it has the right to make all reasonable rules in the proper conduct of

its business, and that the particular rule herein question is neither unreasonable nor discriminatory.

Paragraph 64 of section 8 of the Act of March 4, 1913, creating the Public Utilities Commission (37 Stat. 988, title 26, § 89, D. C. Code 1929), authorizes an appeal from any order of the commission fixing rates, tolls, charges, and schedules, and the Supreme Court of the District is authorized on such an appeal to set aside or modify any such decision or order if it finds that it is unlawful or unreasonable. We think the statute sufficiently broad to give the commission jurisdiction in a matter like the present.

In this case the commission approved the rule, and this we think forecloses the question sought to be raised in this proceeding. The rule cannot be said to be an interference with or a regulation of private property, nor is its effect to prevent a citizen from contracting freely with respect to his own property. We are unable to follow the argument of the appellant that because as a property owner he is not a public utility or an "electrical corporation" the rules approved by the commission have no applicability to him. Undoubtedly they have not until he runs counter to them, but that is precisely the position in which he finds himself now. The commission has adopted no rule with relation to his right to generate electricity and distribute it through his building in such way as he desires. What the commission has done is to recognize the right of the power company to put into effect reasonable rules governing the conduct of its operations and its relations with its consumers. The rule approved forbids what appellant seeks to do, and the reasons for it are obvious; it secures equality of rates and of service and prevents rebates and discrimination, and this is enough to justify us in saying there is nothing either unreasonable or arbitrary about it. In this aspect the result of appellant's contention is to demand that the power company shall deliver to him electricity to be used as he may desire without regard to a regulation of the company which provides it shall not be remetered and resold.

The hearing before the commission developed that at the time the rule was put into effect there were a few property owners who were being furnished with electricity through a master meter which in turn they submetered and resold. In some of the instances the electricity was furnished by the property owners to tenants as part of the rent. In others it was sold at the regular retail rates charged to retail customers of the power company generally and the difference between the wholesale and retail rates retained by the property owner as his profit or as his compensation for his investment in wiring and metering his building. The commission, at the instance of different parties in interest, arranged a hearing at which evidence was taken, and as a result of this the commission reached the conclusion that to permit submetering would affect the whole rate structure of the power company and inevitably result in discriminations. There was shown no wrongdoing on the part of the power company nor any overreaching on its part. On the contrary, the rule is a reasonable protection to the revenues of the company, and this it has a right to. It is also a prevention of discrimination which it is its duty to avoid.

Since, as we have seen, appellant has no positive right to compel the power company to furnish service to him contrary to its own rules and regulations duly approved by the commission, the company's right to suspend or discontinue the service in accordance with its notice can neither be controlled nor restrained.

Affirmed.