16332

HIERS v. SOUTHEASTERN CAROLINAS TELEPHONE CO.

(58 S. E. (2d) 692)

*Mr. Fred L. Hiers,* of Bamberg, *for Appellant,*

*Messrs. Warren and Warren,* of Hampton, *and Kearse and Ness,* of Bamberg, *for Respondent,*

March 31, 1950.

FISHBURNE, Justice.

This was an action in tort to recover damages, actual and punitive, for the wrongful discontinuance of telephone service and removal of a telephone from plaintiff's place of business in the town of Olar.

The plaintiff charged the defendant, Southeastern Carolinas Telephone Company, with negligence and willfulness and a conscious disregard of the rights of the plaintiff in the cutting out of his telephone. The answer of the defendant was in effect a general denial. Upon trial, at the close of the testimony offered by the plaintiff, the defendant made a mo-

tion for a nonsuit, which was granted by the trial court, on the ground that the plaintiff failed to establish with any degree of certainty the amount of profits lost by reason of being deprived of the use of a telephone in his place of business; and that any finding as to damages sustained would necessarily have to be based solely upon conjecture, inasmuch as the evidence on this issue was too speculative upon which to base a recovery.

There was evidence tending to show that the plaintiff operated a filling station, garage and repair shop located on rented premises in the town of Olar, and that he bought the business with its stock, equipment and tools in October, 1947, for the sum of $1,200.00. When he took possession there was a telephone in the filling station, and he made arrangements with the agent of the company for its rental and for the continuance of the telephone service. The monthly rental ran from the twenty-first of one month to the twenty-first of the next month, and bills for service were rendered by the telephone company during the period between the first and fifth of each month.

When the bill for the telephone rental was received by the plaintiff on February 1, 1948, he discovered errors and mistakes therein which showed that he had been overcharged for long distance calls. This matter was at once taken up by plaintiff with defendant's local agent at Olar; and he likewise promptly telephoned the defendant's superintendent, who immediately came to the filling station in response to the call. Upon the arrival of the superintendent at plaintiff's place of business, he told the plaintiff's father, who was in charge there, that the telephone company made no mistakes, and that if the entire bill was not paid, the telephone service would forthwith be discontinued. The plaintiff's father, Milton Hiers, testified: "I could not reason with him he got right rough. I told him I didn't send for anybody to have trouble with, I wanted to straighten the bills out." Immediately following this interview, the super-

intendent cut the wires leading into the filling station, which discontinued the telephone service.

It appears from the record that there were two superintendents acting for the defendant: one an outgoing superintendent, Mr. Bigby, and the other, Mr. Stevenson, who disconnected the telephone. Both were on duty on this occasion. There is testimony showing that within thirty minutes after Stevenson left the filling station, Bigby called in person and inquired of Milton Hiers, "if we got the bills straight." Hiers thereupon told Bigby that ·he could not reason with Stevenson, and that Stevenson had discontinued the telephone service. He definitely informed Bigby that the telephone was an indispensable adjunct in the operation of the filling station, and that the business, with its various activities, could not be carried on without it. Bigby promised to re-connect it in two or three days, but he returned a week later to the filling station and stated that Stevenson would not permit him to re-install the telephone.

Testimony for the plaintiff tends to show that after his purchase of the filling station business from the previous owner, he bought three or four hundred dollars worth of additional tools and equipment, and reconstructed a garage in the back of the building; that this remodeling, and repair of the grease rack, cost a considerable amount. A new battery charger was purchased on the first of January, 1948, and also a number of new jacks and chain hoists.

After the plaintiff's telephone was discontinued, his business promptly fell off, and in the course of a month had decreased to such an extent that he was operating at a loss. Customers who had theretofore telephoned from their homes or places of business to have flat tires repaired or changed, and dead batteries recharged, could no longer do so. It was shown that all of his competitors in the town of Olar had telephones. Finding it impossible to profitably operate his business without a telephone, plaintiff sold his stock and equipment at a greatly reduced price on March 29, 1948;

and testified that in doing so he lost the sum of Seven Hundred Dollars.

Some time before the sale, Stevenson, the superintendent, called at plaintiff's place of business, stated that he had rechecked the figures, and apologized for the rough language he had previously used; he said that some telephone companies did make mistakes, and that upon rechecking the plaintiff's bill, discovered that the plaintiff had been overcharged four dollars on long distance calls. When this error was corrected, plaintiff paid the bill, but the telephone was not restored, and the sale of plaintiff's business followed. Plaintiff testified that no dispute had ever previously arisen between him and the telephone company with reference to the amount of a telephone bill. And when the bill in dispute was received, on February first, the plaintiff offered to pay Mr. Stevenson the correct amount according to the record kept by him. This was refused by the superintendent, and the telephone was discontinued.

The following principle was laid down in *O'Neal v. Citizens' Public Service Co. of South Carolina,* 157 S. C. 320, 154 S. E. 217, 218, 70 A. L. R. 887:

"The law in South Carolina is that a public service corporation has no right to refuse service to a person or to discontinue his service when there is then pending a legitimate dispute as to the correctness of the bill rendered. The court has held that mandamus is an appropriate remedy in cases of this character. *Poole v. Paris Mountain Water Co.,* 81 S. C. 438, 62 S. E. 874, 876, 128 Am. St. Rep. 923; *Benson v. Paris Mountain Water* Co., 88 S. C. 351, 70 S. E. 897.

"This court has further laid down the rule that, where the bills are admittedly correct, it is the duty of the subscriber to pay such just bill, and the public service corporation has a perfect right to discontinue service under such conditions. This is clearly set forth in the case of *Barrett v. Broad River Power Company, supra* [146 S. C. 85, 143 S. E. 650]."

From the summary of the evidence given, which we must view in the light most favorable to the plaintiff, we think that it was for the jury to determine whether or not a legitimate dispute existed between plaintiff and defendant concerning the telephone bill.

And we are likewise of the opinion that the issue of damages, actual and punitive, should have been submitted to the jury. The plaintiff's evidence tends to show that he had been profitably engaged in operating his filling station for about four months, and that following the wrongful discontinuance of his telephone service, the volume of business immediately decreased, and finally became so unprofitable that it resulted in the sale of the business, at a loss to plaintiff of approximately $700.00. It reasonably appears that he sacrificed his business in the sale of the tools and equipment as a result of the cutting out of his telephone. No effort was made to prove loss of profits in dollars and cents. General proof of this element of damage, however, tended to show the necessity for the forced sale of plaintiff's business, in consequence of which he suffered a monetary loss.

It is difficult in cases of this kind to measure accurately the exact amount of damages which might have been sustained, but that fact alone should not deprive the plaintiff of his right to submit his claim to the jury. If an excessive verdict should be the result, the remedy therefor rests in the hands of the trial judge.

We are also of the opinion that a reasonable inference could be drawn from the evidence that there was a reckless, wilful and conscious invasion of the rights of the plaintiff by the defendant.

Concerning the elements of damage in a case of this kind, the court announced this principle in *Gordon v. Rothberg,* 213 S. C. 492, 50 S. E. (2d) 202, 208; "Where, as in this case, the legal rights of the respondent had been invaded, the law presumes that he suffered some actual dam-

ages, and it was therefore not improper for the trial judge to direct a verdict for such form of damages against the appellants, leaving the amount thereof to be determined by the jury."

And the court further stated in the above-cited case that the issue of punitive damages should be submitted to the jury where the evidence tended to show a reckless, wilful invasion of the rights of the plaintiff.

The evidence offered by plaintiff was sufficient, if believed, to show that the telephone was a necessity to him in the conduct of his business, and that its wrongful removal resulted directly and proximately in nominal if not substantial damages, which entitled him to go to the jury on the question of actual damages. Likewise on this point see *Charles v. Texas Co.,* 199 S. C. 156, 18 S. E. (2d) 719.

Many cases in point are collected and contrasted in Annotations to be found in Ann. Cas. 1913B, Page 1120, and 23 A. L. R. 952.

It was held in *Cumberland Telegraph and Telephone Co. v. Hobart,* 89 Miss. 252, 42 So. 349, 351, 119 Am. St. Rep. 702: "When the telephone company undertake[s] to cut out their subscribers for debts which they claim to be due them, they may do so if the subscriber actually owes them, but if the subscriber is not indebted to them, they are liable * * * for such actual damage, inconvenience, and annoyance as is occasioned him by wrongfully cutting out his telephone."

In *Southern Bell Tel. & Telegraph Co. v. Earle,* 118 Ga. 506, 45 S. E. 319, 321, where a telephone was removed because the plaintiff would not pay an amount owing by a former occupant of the premises for rent of the telephone and it appeared that the plaintiff was in the grocery business and depended to a great extent upon telephone orders, it was held to be proper to charge the jury that the plaintiff was entitled to recover "such damages as would naturally

flow from the wrong act of the defendant; and this could be done without proof of any actual amount." The court also held that "it was not error to give in charge to the jury the law relating to punitive damages, especially in view of the evidence that the defendant's agents invaded the plaintiff's premises in his absence and without his consent, and took the telephone away."

And in *Harbaugh v. Citizens Tel. Co.,* 1916, 190 Mich. 421, 157 N. W. 32, Ann. Cas. 1918E, 117, the court held that to prove actual damages sustained by a telephone subscriber for unwarranted discontinuance of a business phone for a week, the subscriber might show that profits fell off during this period of interruption, although he must supplement such testimony by evidence that this diminution of profits was not due to other causes than failure of telephone service.

The defendant gave notice that it would ask the court to sustain the order granting a nonsuit upon the additional ground that the plaintiff failed to introduce any evidence showing that he attempted to avoid or minimize his alleged damages. It is argued by defendant in support of this additional ground that the plaintiff could have avoided or minimized his damages by paying the full amount of the disputed bill and leaving adjustments and corrections for a later date. This question was decided adversely to the defendant's contention in *O'Neal v. Citizens' Public Service Co. of South Carolina,* 157 S. C. 320, 154 S. E. 217, 70 A. L. R. 887. In that case, error was assigned to the court below in refusing to charge the jury that where there was a disagreement as to the amount justly due, it was proper and correct for the plaintiff to have paid the same under protest, then sue for the recovery of the amount so paid, and apply to the court in such suit for an order enjoining the defendant from discontinuing such service. The Court held: "As above stated, the plaintiff did not have to pursue this course, and this was not his exclusive remedy. For this court to lay down such a principle would mean that

it would be necessary for a telephone subscriber in a dispute over a small amount to engage in expensive litigation to prevent an injury being done to him by the public service corporation. It would be just as reasonable to say that it was the duty of the public service corporation to sue the plaintiff and secure a judgment against him before discontinuing his service. If the public service corporation relied on the correctness of its bill to discontinue service and such bill is found to be correct, under the *Barrett Case, supra,* it is an absolute defense. If the bill is not correct, however, then the discontinuance is made at the peril of the company."

Judgment reversed, and case remanded for a new trial.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.