133 So.2d 505

**COOSA VALLEY TELEPHONE COMPANY**

v.

**U. C. MARTIN.**

7 Div. 539.

Supreme Court of Alabama.

June 22, 1961.

Moore, Thomas, Taliaferro, Forman & Burr, M. L. Taliaferro and C. V. Stelzenmuller, Birmingham, for petitioner.

Starnes & Holladay and John H. Martin, Pell City, opposed.

MERRILL, Justice.

Petitioner, Coosa Valley Telephone Company, appealed from a judgment of $100 in favor of Martin, a dentist in Pell City, in an action for damages because petitioner discontinued his telephone service. The Court of Appeals affirmed the judgment and the writ of certiorari was issued to review the action of that court.

A summation of the facts, more fully stated in the opinion of the Court of Appeals, follows:

In 1955, petitioner bought the assets of the St. Clair County Telephone Company and was authorized to serve the Pell City area by the Alabama Public Service Commission.

The company tariff, filed with the Public Service Commission, authorized the company to bill subscribers one month in advance.

The tariff also provided that in the event of any nonpayment of sums due from subscribers, the company could discontinue service to the subscriber provided adequate notice was given.

When the petitioner took over the assets of the St. Clair County Telephone Company, it made all bills payable in advance. The St. Clair Company had billed only for arrears. Consequently, in January, 1956, respondent was billed by petitioner for December services and in advance for January. He paid only the December bill and continued to pay only in arrears, or the bill for the preceding month, until after his phone was disconnected in May, 1959. Throughout this period, he received reminders of past due bills. Before disconnecting his phone, petitioner sent the requisite notice of intent to discontinue service if full payment were not made. However, no notice or threat of discontinuance of service was made until the spring of 1959.

If we understand the opinion, it was held that the telephone company waived its right to discontinue service because it did not discontinue service the first month Martin was in arrears in January, 1956, and having waived the right, it was liable for damages for disconnecting the telephone later because the May, 1959 bill was not paid in advance.

The effect of the decision is that a failure on the part of a utility to suspend service when a subscriber's account becomes delinquent would effectively prevent the utility thereafter from suspending service for a subsequent like default.

It is settled in this state that a utility is not liable for damages caused by discontinuance of service to a delinquent subscriber. Hieronymus Bros. v. Bienville Water Supply Co., 131 Ala. 447, 31 So. 31; Sims v. Alabama Water Co., 205 Ala. 378, 87 So. 688, 28 A.L.R. 461; Arnold v. Alabama Power Co., 206 Ala. 506, 90 So. 909; Mobile Electric Co. v. Nelson, 209 Ala. 554, 96 So. 713.

Title 48, § 53, Code 1940, authorizes a utility to change or alter a service regulation. This authorization includes the change in the instant case in requiring the bill to be paid in advance. Tit. 48, § 35, expressly recognizes the right of a utility to discontinue service for "nonpayment of charges."

We find no place for the doctrine of permanent waiver or estoppel in this case. We think there was an election or option in the course petitioner could follow. It could have given notice and legally terminated telephone service to Dr. Martin the first month he failed to pay in advance. But it elected to continue to serve him and apply

his monthly payments against his delinquent account.

■ Both the rules of the Commission and the general tariff of petitioner provide that the company *may* discontinue service to a subscriber who is delinquent in his payments. Therefore, each time a patron is delinquent in payment, the utility is presented with an option, either to discontinue service or keep furnishing it and give the patron an opportunity to get his payments current. And we think the case of Cobb v. Juneau Telephone Co., 6 Alaska 138, cited by the Court of Appeals, sustains this view. True, the court said that the company had waived its right to discontinue service due to nonpayment of bills due December, January, February and March, but the court also said—"the rule had not been waived for April services." That case seems to hold that when the plaintiff was in arrears for the April bill, and the telephone company disconnected his telephones in May, and plaintiff brought mandamus to compel reinstatement, tender of the amount of the bill, after suit was commenced, was too late and mandamus was denied, even though the telephones were disconnected earlier in May than "the proper time to cut them out under the rules."

The doctrine of waiver was rejected in other cases. In Woodley v. Carolina Telephone & Telegraph Co., 163 N.C. 284, 79 S.E. 598, 600, the plaintiff brought an action for damages for discontinuing telephone service. The defense to the action was that plaintiff had failed to pay in advance. Plaintiff argued that the company had waived its right to receive advance payments because he had never paid in advance and the service was not discontinued until he had made several late payments, as in the instant case. The court said:

"It is further argued that the company has waived the right in question by not having enforced it for a year or so after making the regulation, but such a position cannot at all be maintained. In order to [sic] a valid waiver, there must be an agreement founded on consideration, or there must be some element of estoppel. Neither is present here. It was only a case of temporary acquiescence in a different method on the part of the company, and from a disposition to oblige its patrons, and there was nothing to prevent defendant from enforcing its regulation when it was ascertained by trial that the business could not be satisfactorily conducted in the other way.

"Apart from this, the doctrine of waiver is subject to the control of public policy, and a public service corporation no more by waiver than by contract is allowed to put itself in position which prevents the proper performance of its statutory duties, and affording its service at reasonable rates and without discrimination amongst its patrons."

Another similar case is Malochee v. Great Southern Telephone & Telegraph Co., 49 La.Ann. 1690, 22 So. 922, 923. There, the charges were to be paid in advance by the year. Payments for the first and second years were accepted in July and October respectively. Service was discontinued in September of the third year for failure to pay in advance for the third year. As to the question of waiver, the court said:

"The defendants surely were under no obligation to continue their telephone service to plaintiff without payment of the stipulated price for the service. Payment in advance was the requirement. The waiver of the advance for the first two years could not be extended to the third year. The waiver was grace, not a matter of right. * * *"

We do not think the facts stated by the Court of Appeals support the application of the waiver theory. Some of the cases cited in the opinion of that court are inapposite because they are concerned with cases where the amount claimed to be due

was in dispute. Those cases are Hiers v. Southeastern Carolinas Telephone Co., 216 S.C. 437, 58 S.E.2d 692; Birmingham Waterworks Co. v. Davis, 16 Ala.App. 333, 77 So. 927; Louisville Tobacco Warehouse Co. v. Louisville Water Co., 162 Ky. 478, 172 S.W. 928. It is the law in Alabama and other jurisdictions that a utility discontinues service at its peril when there is a just and a bona fide dispute as to the amount of the bill. Sims v. Alabama Water Co., 205 Ala. 378, 87 So. 688, 28 A.L.R. 461; 43 Am.Jur., Public Utilities and Services, § 65. In the instant case, there was no dispute as to the amount of the monthly bill, and each bill carried the statement for the past month and the advance payment for the present month.

Two other cited cases, Peddicord v. Tri-City Gas Co., 232 Ala. 445, 168 So. 166; Birmingham Gas Co. v. McKinley, 228 Ala. 596, 154 So. 562, turn on the failure of the utility to give the proper notice, although the amount was in question in the last cited case. Here, the opinion of the Court of Appeals shows that notice that service would be stopped was given in the spring of 1959.

The case of Cumberland Telegraph & Telephone Co. v. Hobart, 89 Miss. 252, 42 So. 349, is not apt because there, the telephone company demanded, as a condition to reinstatement of service, that the amount due under a separate contract for a telephone in a different building for which his wife only was liable, be paid.

In State ex rel. Payne v. Kinloch Telephone Co., 93 Mo.App. 349, 67 S.W. 684, 685, the issue was also a disputed bill, with the telephone company demanding pay for a period of time when the telephone did not give service. There was a similar dispute over the amount of the bill in O'Neal v. Citizens' Public Service Co., 157 S.C. 320, 154 S.E. 217, 70 A.L.R. 887.

It is true, as stated by the Court of Appeals, that "the telephone company could have brought an action against Dr. Martin before a justice of the peace * * *." But the cases do not seem to recommend that procedure. In Sims v. Alabama Water Co., 205 Ala. 378, 87 So. 688, 689, 28 A.L.R. 461, this court quoted the following with approval: "The slightest reflection will show that a water company could not do business if its only remedy for the waste of its water by its consumers consisted in actions at law against them severally."

In Southwestern Telegraph & Telephone Co. v. Danaher, 238 U.S. 482, 35 S.Ct. 886, 888, 59 L.Ed. 1419, the court said:

"* * * for not only are telephone rates fixed and regulated in the expectation that they will be paid, but the company's ability properly to serve the public largely depends upon their prompt payment. They usually are only a few dollars per month, and the expense incident to collecting them by legal process would be almost prohibitive. * * *"

It is common knowledge that most places of business and residences in Alabama are served by some utility. There is always a probability that some subscribers will be on vacation at bill paying time, or mislay the bill, or forget it, or be temporarily financially unable to pay the bill. To suggest or hold that the utility must discontinue service immediately upon the bill becoming delinquent, or by inaction to have perpetually waived the right to discontinue service for nonpayment of charges, appears neither ethical, practical or in the best interests of either the subscribers or the utilities.

The judgment of the Court of Appeals is reversed and the cause is remanded to that court.

Reversed and remanded.

All the Justices concur.