18202

Mrs. Rita JOHNSON, Respondent, v. GENERAL TELEPHONE COMPANY OF THE SOUTHEAST, Appellant

(135 S. E. (2d) 854)

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, and *Weinberg & Weinberg,* of Sumter, *for Appellant,*

Messrs. *Nash & Wilson*, of Sumter, *for Respondent*,

April 17, 1964.

BRAILSFORD, Justice.

This is an action by Rita Johnson, a telephone subscriber, for damages for the alleged wrongful discontinuance of telephone service to her residence. Verdict was for plaintiff and the defendant, General Telephone Company of the Southeast, has appealed, assigning as error the refusal of its motion for a direct verdict.

The factual background of the controversy is that in May, 1962, one Ida Whetzel, a guest in plaintiff's home, made an unauthorized call to Okinawa from plaintiff's telephone, and incurred charges amounting to $101.20, including tax. Plaintiff's bill of June 25, 1962, payable before July 5, 1962, included this item. In the meantime, Mrs. Whetzel had been to the telephone company's office and had represented that she would pay for the Okinawa call in two installments, the first to be paid by August 1 and the second by September 1. The company agreed to accept payment in this fashion, and notified plaintiff that she might deduct this charge from the June bill and pay the balance, which plaintiff did.

In due course, plaintiff received her next bill from the telephone company, dated July 25, 1962, payable before August 5, 1962, in the amount of $113.06. This bill carried the item of $101.20 as a "previous balance," with the notation that it should be deducted "if paid previously." It also included a charge of $3.00 for a call to Suisun, California.

Plaintiff disclaims any knowledge of this call and denies that it was made from her telephone.

On August 1, 1962, a representative of the telephone company, one Sarah Geiger, called plaintiff over the telephone and advised her that Mrs. Whetzel had not complied with her promise to pay for the Okinawa call and that, unless it should be paid on that day, plaintiff's telephone would be disconnected. Plaintiff's only response was that she did not know the whereabouts of Mrs. Whetzel. She made no request for an extension of time and no protest about the action which the company proposed to take and which it did take on the following day, August 2nd. Nor did she then, or at any time prior to the commencement of the action, raise any question about the correctness of the bill of July 25th.

Rule 12 of the Rules and Regulations of the South Carolina Public Service Commission governing the operation of telephone companies provides:

"The subscriber shall pay monthly in advance or on demand all charges for exchange telephone service and equipment and shall pay on demand all charges for toll telephone service. The subscriber assumes responsibility for all charges for exchange service and toll messages originating at the subscriber's station and for all toll messages received at the subscriber's station on which the charges have been reversed with the consent of the person called." (Code of Laws 1952, Vol. 7, p. 832).

In *Miller v. Central Carolina Telephone Company*, 194 S. C. 327, 8 S. E. (2d) 355, 127 A. L. R. 722, it was held that a special contract exempting a telephone subscriber from liability for unauthorized calls placed over his telephone, if established by the evidence, was illegal as contrary to the foregoing rule and the utility's duty to furnish nondiscriminatory service to its customers. The reasons for this ruling are ably expounded in the opinion of the court, which concludes:

"Our opinion, then, is that the special contract is invalid and unenforceable, as being contrary to the rules and regulations legally adopted by the Public Service Commission; and that the defendant had a right to discontinue the telephone service upon plaintiff's refusal to pay the charges made."

Under the authority of the *Miller case,* the circuit judge inevitably concluded that the defendant had the right to terminate plaintiff's service because of her failure to pay the past due toll for the Okinawa call, and he so instructed the jury. However, he submitted to the jury, as an issue of fact, whether the defendant had demanded payment of the entire bill of July 25th, including the toll for the California call, which plaintiff did not owe, on August 1, 1962, as a condition of continuing her service beyond that date. He instructed the jury that if the company did demand payment of the entire bill and if it terminated the service for plaintiff's failure to pay it, then the discontinuance would be wrongful and plaintiff could recover.

While it may be conceded that there was evidence from which it could be concluded that the demand made on plaintiff on August 1st was equivocal, it is quite clear that she was not misled thereby and fully understood that payment of the amount carried on her current bill as "previous balance" was the condition of continuing her telephone service. The bill showed on its face that the other items were current. That plaintiff knew this and knew what was being demanded of her is clearly shown by her testimony.

"Q. When she called you up on August 1st, you say she told you Mrs. Whetzel had not paid?

"A. That's right.

"Q. And on account of that they were going to cut off the telephone?

"A. Yes, sir."

* * *

"Q. When she called on August 1st, the bills for these other things were not due until the 10th, were they?

"A. No, sir.

"Q. And all she spoke to you about was the call to Naha, Okinawa, isn't that correct?

"A. That's right.

"Q. And you had no idea of paying the telephone company that toll charge, $101.20? You didn't intend to pay that at all, did you?

"A. Yes, sir, I would have but I couldn't have got it that day."

Elsewhere in her testimony, plaintiff stated several times, in effect, that she was financially unable to pay for the toll on the Okinawa call when payment was demanded of her by the defendant. The other items on the bill were never assigned as a reason for non-payment, nor their non-payment as a reason for termination.

We conclude that the only reasonable inference from the evidence is that the defendant exercised a clear legal right in terminating plaintiff's telephone service and that such termination was not an actionable wrong.

Reversed and remanded for entry of judgment for defendant.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.