**TELECO, INC., a corporation, Plaintiff,**

**v.**

**SOUTHWESTERN BELL TELEPHONE COMPANY, a corporation, Defendant.**

**Civ. No. 73–204–D.**

United States District Court, W. D. Oklahoma.

Feb. 7, 1974.

See also D.C., 392 F.Supp. 690.

Collier Pate, Oklahoma City, Okl., for plaintiff.

Robert D. Allen, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Defendant is a supplier of telephone service to the public in Oklahoma under tariffs filed with the Oklahoma Corporation Commission. Article 9, Sections 34 and 18, Oklahoma State Constitution. Plaintiff was and is one of its customers. Plaintiff connected some of its privately owned telephone equipment to the Defendant's telephone facilities by "direct electrical connection" or what is sometimes called to "hard wire" directly into Defendant's telephone system. Defendant advised Plaintiff that such connection violated its tariffs [1] filed with the Oklahoma Corporation Commission in that under the same such a connection could only be accomplished by use of a Defendant—installed "coupler" or connecting arrangement or device (STC) with monthly charges for the same to be paid by Plaintiff.[2] Defendant requested that Plaintiff cease such violation. Plaintiff refused. Defendant then delivered written notice to Plaintiff that its telephone service would be interrupted and suspended unless Plaintiff ceased its violation of Defendant's filed tariff within ten days.[3] Plaintiff re-

---

[1]. By its Order No. 68516 issued in Case No. 23713, the Oklahoma Corporation Commission established General Telephone Rules and Regulations. Rule 1 provides for the filing of tariff offerings and stipulates that such tariffs are binding upon the telephone company and the public. The pertinent tariff here involved and which became effective April 1, 1969 provides:
"E. Connection of Customer-Provided Communications Systems.
 1. General
 Customer-provided and maintained systems may be connected at a service point of the customer, on a voice grade basis, with exchange and long distance message telecommunications service either through a network control signaling unit and connecting arrangement, furnished, installed and maintained by the Telephone Company or through customer-provided equipment which affects such connections externally to a Telephone Company network control signaling unit by means of an acoustic or inductive connection for transmitting and/or receiving . . . " (General Exchange Tariff, Connections with Equipment or Facilities Provided by Customers, Original Sheet 31)
Note: Plaintiff's equipment was not an acoustic or inductive system.

[2]. The pertinent tariff providing for a monthly charge payable by the Plaintiff for the above connecting arrangement as a special assembly reads as follows:

"A. Special assemblies of equipment consist of modifications of standard equipment, special equipment or service arrangements for which provision is not otherwise made in this tariff. They will be furnished, when practicable, by the telephone company at charges equivalent to the estimated cost of furnishing such equipment and arrangements if in connection with and not detrimental to any of the services furnished under the company's tariffs." (General Exchange Tariff, Special Assemblies of Equipment, Original Sheet 1)
Note: Plaintiff was advised of a monthly charge of $6.00 for the connecting arrangement to which charge it objected. Under the written agreement by which service was restored to Plaintiff it was agreed that said charge would not be enforced against Plaintiff but would accumulate until a decision is made by the Oklahoma Corporation Commission as to the validity of the rate. Plaintiff has dismissed the proceeding before the Oklahoma Corporation Commission which would have decided this matter.

[3]. Another tariff filed with the Oklahoma Corporation Commission provides in part:
"I. Rules and Regulations applying to all customers' contracts.
. . . Failure on the part of customers to observe these rules and regulations of the company automatically gives the company the right to cancel the contract and discontinue the furnishing of service." (General Exchange Tariff, Rules and Regulations Ap-

fused and after such period of time expired Defendant interrupted and suspended telephone service to Plaintiff. Such interruption of service continued for approximately five days. The parties reached an agreement in writing whereupon the telephone service was restored and continues today.[4]

The Plaintiff brought two State Court actions against the Defendant, the first for an alleged breach of contract by Defendant and the second for an alleged conversion of Plaintiff's own telephone equipment by Defendant, both actions being based on Defendant's said interruption and suspension of telephone service to Plaintiff. In these actions the only relief sought by Plaintiff is the recovery of actual and punitive monetary damages. These two State Court actions have been removed by Defendant to this Court in one Petition for Removal. They were given the captioned number. The Court has ordered the two removed State Court petitions consolidated for disposition in this Court. Rule 42(a), Federal Rules of Civil Procedure.

To Plaintiff's claims the Defendant denies it breached a contract with Plaintiff or converted Plaintiff's telephone equipment, asserting that Plaintiff violated the aforementioned tariffs filed with the Oklahoma Corporation Commission and therefore its contract with Defendant and upon such violation Defendant had both the right and duty to interrupt Plaintiff's telephone service after Plaintiff refused to desist in such tariff violations after written notice.

In the above posture, the Court has under consideration Defendant's Motion For Summary Judgment on Plaintiff's claims for breach of contract and conversion which Motion is supported by several documents. Plaintiff opposes the Motion. Both parties have filed Briefs to the Motion and the Court has heard oral arguments on the same.

plying to all Customers' Contracts, 10th Revised Sheet 1 Replacing 9th Revised Sheet 1 and 1st Revised Sheet 1–A)

4. This letter agreement reads as follows:
"July 19, 1972
Mr. Robert D. Allen
Attorney at Law
Southwestern Bell Telephone Company
707 North Robinson
Oklahoma City, Oklahoma
Re: Agreement between Teleco, Inc. and
 Southwestern Bell Telephone Company
Dear Mr. Allen:
This letter is for the purpose of stating the agreement we verbally reached on behalf of our respective clients.
The agreement reached is as follows:
 1. Teleco, Inc. agrees not to violate any filed Southwestern Bell Telephone Company General Exchange Tariff; specifically, not to "hard wire" or wire directly into the telephone system.
 2. Southwestern Bell Telephone Company agrees to immediately install requested connecting devices (STC) *at the business location* of Teleco, Inc. and connect a telephone instrument to the line in conjunction with each STC.
 3. Southwestern Bell Telephone Company agrees to forthwith reinstate normal telephone service to Teleco, Inc. with the same service and telephone numbers previously enjoyed by Teleco, Inc.

4. A charge for the added telephone instrument will be billed monthly to Teleco, Inc. at any existing tariff; that said charge is agreed not to be enforced against Teleco, Inc. but will accumulate until a decision is made by the Oklahoma Corporation Commission as to the validity of the rate. In the event the rate is upheld by the Commission, Teleco, Inc. agrees to pay said accumulated charges forthwith. In the event the charge is rejected by the Commission, Southwestern Bell Telephone Company agrees to forthwith delete said accumulated charge from Teleco's billing and will not bill said charge in the future.
This agreement in writing incorporated all the verbal agreements heretofore reached by the respective parties.
Cordially,
Collier H. Pate
CHP/nr

I have read the above agreement, and on behalf of Teleco, Inc., as its attorney, agree to all points contained therein, effective July 19, 1972.

Collier H. Pate
Attorney for Teleco, Inc.

I have read the above agreement and on behalf of Southwestern Bell Telephone Company, as its attorney, agree to all points contained therein, effective July 19, 1972.
Robert D. Allen, Attorney for
Southwestern Bell Telephone Company"

■ Tariffs filed with the Oklahoma Corporation Commission "are the law". Shehi v. Southwestern Bell Telephone Company, 382 F.2d 627 (Tenth Cir. 1967). See Note 1, *supra*. Also see Palermo v. Bell Telephone Company of Pennsylvania, 415 F.2d 298 (Third Cir. 1969); Carrigan v. Sunland-Tujunga Telephone Company, 263 F.2d 568 (Ninth Cir. 1959) cert. den. 359 U.S. 975, 79 S.Ct. 893, 3 L.Ed.2d 841; Western Union Telegraph Company v. Esteve Bros. & Co., 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921); Carter v. American Telephone & Telegraph Company, 365 F.2d 486 (Fifth Cir. 1966) cert. den. 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). In the *Carter* case the Court said:

> ". . . a tariff required by law to be filed is not a mere contract. It is the law."

The regulation of telephone service in Oklahoma falls within the police power of the state. Blakeley v. Corporation Commisision, 332 P.2d 1103 (Okl.1958). A regulated telephone company has the duty under Oklahoma law to serve the public without discrimination. Hixon v. Snug Harbor Water & Gas Co., 381 P.2d 308 (Okl.1963). The right to telephone service is not an inherent right but a right to be exercised under the police power of the state and may be limited by conditions of tariffs. Smith v. Southern Bell Tel. Co., 268 Ky. 421, 104 S.W.2d 961 (1937); Wilkinson v. New England Tel. & Tel. Co., 327 Mass. 132, 97 N.E.2d 413 (1951); Palma v. Powers, 295 F.Supp. 924 (N.D.Ill.1969).

■ Thus, the pertinent tariffs (as the law) became a part of any contract between Plaintiff and Defendant with reference to Plaintiff's telephone service [5] and as Plaintiff has admitted a tariff violation by its "direct electrical connection" [6] and admits receipt of notice from Defendant of such claimed "hard wire" tariff violation and of Defendant's intention to suspend Plaintiff's telephone service for such violation unless the violation was discontinued, which notice the Court deems to be reasonable as a matter of law, and as a further tariff filed with the Oklahoma Corporation Commission provides that the Defendant may discontinue service to a customer who violates a tariff, Plaintiff's claim that Defendant breached a contract between them by enforcing the tariff and interrupting Plaintiff's telephone service upon Plain-

---

5. 17 Am.Jur.2d, Contracts, Section 257, Page 654–6 provides:

 "Law as part of, and as controlling, contract.

 It is a general rule that contracting parties are presumed to contract in reference to the existing law; indeed, they are presumed to have in mind all the existing laws relating to the contract, or to the subject matter thereof. Thus, it is commonly said that all existing applicable or revelant and valid statutes, ordinances, regulations, and settled law of the land at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention."

 Loveless Mfg. Co. v. Roadway Exp., 104 F. Supp. 809 (N.D.Okl.1952) provides in part:

 "There is numerous authority for the proposition that where motor carriers engaged in interstate commerce have on file tariffs stating their rates and regulations, that such tariffs are binding on all parties concerned and have the force and effect of law. Jackson & Perkins Co. v. Mushroom Transportation Co., 351 Pa. 583, 41 A.2d 635, certiorari denied 326 U.S. 733, 66 S.Ct. 42, 90 L.Ed. 427; Annotations to 49 U.S.C.A. §§ 319, 20(11, 12). The tariffs bind the parties whether they have actual notice of them or not and are a part of the contract of carriage along with the bill of lading."

 Also see General Electric Company v. Moretz, 270 F.2d 780 (Fourth Cir. 1959).

6. During oral arguments on the Motion under consideration the following occurred:

 "THE COURT: Well now, does the plaintiff acknowledge that they attached a device to the defendant's system by direct electrical connection?"

 "MR. PATE: Yes, sir, we do."

 "THE COURT: And do you also acknowledge that this was not done through an interconnection arrangement installed by the defendant telephone company?"

 "MR. PATE: Yes sir, we do."

 (Transcript of hearing, pp. 25–26)

tiff's refusal to desist in a tariff violation is without merit as a matter of law. To the contrary, it is conclusively shown that Plaintiff violated the contract between the parties regarding telephone service.

 Plaintiff's next claim that Defendant has converted its privately owned telephone equipment by the interruption of telephone service to the Plaintiff is without legal foundation. There is no claim made by Plaintiff that Defendant has physically taken possession of Plaintiff's privately owned telephone equipment. "Conversion" is any distinct act of dominion wrongfully exerted over personalty of another in denial of or inconsistent with his rights therein. Benton v. Ortenberger, 371 P.2d 715 (Okl.1962). As stated above the right to telephone service is not an inherent right but a right to be exercised under the police power of the state and may be limited by tariffs. The right to telephone service is not personalty or personal property which is capable of being converted, the right is not a vested right but in reality a privilege. United States Light & Heat Corp. v. Niagara Falls Gas & E. L. Co., 47 F.2d 567 (Second Cir. 1931) cert. den. 283 U.S. 864, 51 S.Ct. 656, 75 L.Ed. 1469; Midland Realty Co. v. Kansas City Power & Light Co., 300 U.S. 109, 57 S.Ct. 345, 81 L.Ed. 540 (1936). The Court therefore concludes under the undisputed facts before the Court that Defendant did not take possession of or commit an act of dominion over Plaintiff's telephone equipment by interrupting its service to Plaintiff and convert the same to its own use. But, if it could be said that Defendant committed an act of dominion over Plaintiff's telephone equipment by interrupting its telephone service to Plaintiff it was not a *wrongful* domination *in denial of Plaintiff's rights in said equipment* as shown elsewhere herein. Any such domination would have been lawful, not wrongful, because Plaintiff violated a tariff and Defendant thereupon had the right and duty to interrupt service after notice. Moreover, Plaintiff was attempting to use its own telephone equipment in excess of its rights to use the same in connection with Defendant's regulated telephone facilities.

Thus, Plaintiff's conversion claim is without legal basis and must fail. No factual disputes are involved regarding this claim and it must fail as a matter of law.

 In its Briefs filed herein in connection with Defendant's Motion For Summary Judgment, the Plaintiff has raised several legal issues which though not plead will nonetheless be considered by the Court. Plaintiff's claim of estoppel and/or waiver on the basis that Defendant had lengthy prior notice of Plaintiff's "direct electrical connection" to its facilities and by doing nothing over a considerable period of time became estopped to interrupt Plaintiff's telephone service and/or waived the application of its tariffs in this respect as to Plaintiff is without legal merit as a matter of law under the undisputed facts of the situation at bar. These familiar legal doctrines might apply in a controversy between private individuals. However, they do not apply in a situation involving the enforcement of tariffs filed with the Oklahoma Corporation Commission in its supervision, regulation and control of telephone companies doing business in Oklahoma. Shehi v. Southwestern Bell Telephone Company, *supra*; Atchison, Topeka and Santa Fe Ry. Co. v. John Sexton & Co., 339 F.Supp. 1202 (D.Kan.1972); Western Union Telegraph Company v. Woods, 266 S.W. 179 (Tex.Civ.App.1924); Building Industries Exhibit, Inc. v. Public Utilities Commission, 150 Ohio St. 251, 80 N.E.2d 836 (1948); Coosa Valley Telephone Company v. Martin, 272 Ala. 383, 133 So.2d 505 (1961); Komatz Construction, Inc. v. Western Union Telegraph Company, 290 Minn. 129, 186 N.W.2d 691 (1971) cert. den. 404 U.S. 856, 92 S.Ct. 102, 30 L.Ed.2d 98 (1971); Kerns v. Western Union Telegraph Company, 198

S.W. 1132 (Mo.App.1917); Williams v. Western Union Telegraph Company, 218 Mo.App. 364, 275 S.W. 570 (1925); Western Union Telegraph Company v. Guitar, 116 Tex. 497, 295 S.W. 598 (1927); Postal Telegraph Cable Company v. Howe, 46 Nev. 239, 211 P. 358 (1923). There is no waiver or estoppel here.

Plaintiff also complains of lack of due process of law to it by not being afforded notice and a hearing before Defendant's tariffs filed with the Oklahoma Corporation Commission became effective and by not receiving notice and an opportunity to be heard before Defendant interrupted Plaintiff's telephone service. Plaintiff also claims that it requested the Defendant to install the required "coupler" but that Defendant arbitrarily refused to install the same.

■ Plaintiff's claim of lack of due process of law by not receiving notice of and an opportunity to be heard before Defendant's tariffs filed with the Oklahoma Corporation Commission became effective is without merit. The tariff procedure utilized under law by state agencies supervising companies which provide public service to the people has been described and characterized as being legislative in nature. And being legislative in nature a due process hearing is not necessary before tariffs become effective. Washington Gas Light Co. v. Virginia Electric And Power Co., 438 F.2d 248 (Fourth Cir. 1971); Lewis v. Potomac Electric Power Co., 62 App. D.C. 63, 64 F.2d 701 (1933). This position of Plaintiff is without merit. Moreover, Plaintiff had and has available to it a legal process before the Oklahoma Corporation Commission in which it can make objections to any tariffs filed with the Commission and have a due process hearing thereon if it so desires. See Oklahoma Corporation Commission Rules

of Practice, effective date January 1, 1970; Blakeley v. Corporation Commission, 332 P.2d 1103 (Okl.1958).

■ As to the complaint that Plaintiff was not given notice and an opportunity to be heard before Defendant interrupted its telephone service, it is undisputed that Plaintiff did receive actual notice of an interruption to be suffered in its telephone service and the reason why. In DiGiacomo v. Diamond State Telephone Company, 356 F.Supp. 1063 (Del.1973) it is held that an action for damages (the only relief sought herein) will not lie for the interruption and termination of telephone service where reasonable prior notice of such interruption or termination has been given the customer.[7] As above stated, it is admitted that Defendant gave prior notice to Plaintiff before termination. The Court finds that the notice as specified and the time period prescribed therein were reasonable as a matter of law. The tariffs as heretofore set out permit service interruption upon a tariff violation. Under the undisputed facts herein Plaintiff's Complaint of not receiving due process of law in connection with Defendant's termination of telephone service to it is without merit as a matter of law. Plaintiff's right to receive telephone service from Defendant does not rise to the level of a constitutional right. See Jackson v. Metropolitan Edison Company, 483 F.2d 754 (Third Cir. 1973). There is no merit to this complaint of Plaintiff as a matter of law.

■ To Plaintiff's complaint that it requested Defendant to install a "coupler" and Defendant arbitrarily refused the request, the Defendant asserts that Plaintiff's request for the installation of the "coupler" was conditioned upon Defendant making no charge in connection

7. Also see Tollin v. Diamond State Telephone Co., 286 F.Supp. 86 (U.S.D.C.Del.1968); Carrigan v. Sunland-Tujunga Telephone Co., 263 F.2d 568 (Ninth Cir. 1959) cert. den., 359 U.S. 975, 79 S.Ct. 893, 3 L.Ed.2d 841; Coosa Valley Telephone Company v. Martin, 272 Ala. 383, 133 So.2d 505 (1961); Plate v. Southern Bell Telephone & Telegraph Co., Inc., 98 F.Supp. 355 (E.D.S.C., 1951); Johnson v. General Telephone Company of S. E., 244 S.C. 182, 135 S.E.2d 854 (1964).

with the coupler as required by the tariffs. This assertion is not disputed. Had Defendant so agreed it would become a party to a tariff violation. Atchison, Topeka & Santa Fe Ry. Co. v. John Sexton & Co., *supra*. Such conditional request was properly refused by Defendant. Moreover, this complaint is clearly one for the Plaintiff to present to the Oklahoma Corporation Commission. Article 9, Sections 18 and 20, Oklahoma State Constitution; 17 Oklahoma Statutes 152; Wood v. Public Utilities Commission, 4 Cal.3d 288, 93 Cal.Rptr. 455, 481 P.2d 823 (1971).

The Court finds and concludes that there are no genuine issues of material facts involved in this case and that Defendant accordingly should be granted Summary Judgment dismissing Plaintiff's action as the same does not contain a claim against Defendant upon which Plaintiff is entitled to relief as a matter of law. Counsel for Defendant will prepare an appropriate Judgment based on the foregoing, present same to opposing counsel and then to the Court for signature and entry herein.