268      .      24 Mass. App. Ct. 268

Lebowitz Jewelers Ltd., Inc. v. New England Telephone & Telegraph Co.

LEBOWITZ JEWELERS LTD., INC. *vs.* NEW ENGLAND
TELEPHONE AND TELEGRAPH COMPANY.

Worcester. February 19, 1987. — June 3, 1987.

Present: SMITH, CUTTER, & WARNER, JJ.

*Telephone Company. Public Utilities,* Tariff. *Negligence,* Telephone company. *Regulation. Administrative Law,* Regulations. *Public Policy.*

In an action against a telephone company by the operator of a jewelry store, where the jury found that the telephone company had been negligent in tagging a certain line with the plaintiff's name, thereby enabling intruders to identify the line in a junction box and neutralize the plaintiff's alarm system, the telephone company was entitled to judgment notwithstanding the verdict, on the ground that recovery was barred by one of its regulations, filed with and approved by the Department of Public Utilities under G. L. c. 159, § 14, which provided in part that "[t]he [t]elephone company shall not be responsible to the customer for damages arising out of . . . interruptions . . . in transmission." [270-272]

No considerations of public policy would preclude a judge from giving effect to a telephone company's regulation, which had been filed with and approved by the Department of Public Utilities under G. L. c. 159, § 14, that provided, in part, "The [t]elephone company shall not be responsible to the customer for damages arising out of . . . interruptions . . . in transmission." [273-274]

CIVIL ACTION commenced in the Superior Court Department on June 10, 1981.

The case was tried before *Gerald F. O'Neill, Jr.,* J.

*J. Albert Johnson* (*George Hassett* with him) for the plaintiff.
*William J. LeDoux* for the defendant.

SMITH, J. This is an appeal by the plaintiff, Lebowitz Jewelers, Ltd., Inc. (Lebowitz), from the allowance by a Superior Court judge of a motion by the defendant, New England Telephone and Telegraph Company (telephone company), for judgment notwithstanding the verdict. Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974).

The essential facts that form the basis of the appeal are not in dispute. The plaintiff operated a jewelry store at the White City shopping center in Shrewsbury. In July, 1975, the telephone company, at the plaintiff's request, agreed to supply a private service line connecting the plaintiff's burglar alarm system in its store to the Shrewsbury police station.[1] As part of its installation process, the telephone company ran a telephone line from the police station to a junction box located inside a shoe store adjacent to the plaintiff's store. The junction box contained over sixty lines, and the telephone company tagged its private service line with the plaintiff's name and identifying numbers. A connection was then made from the junction box to the plaintiff's alarm system.[2]

On September 24, 1979, burglars cut a hole through the roof of the shoe store and gained access to the junction box containing the telephone line with the plaintiff's name on it. They attached to the line an alligator clip connected to a battery. By using that device the burglars were able to neutralize any signal to the police alerting them that there were intruders in the plaintiff's store.[3] Hence, the burglars were able to enter the store and remove large amounts of valuable jewelry without sounding an alarm at the police station.

Subsequently, the plaintiff brought an action in tort in the Superior Court against the telephone company. It alleged that the telephone company had been negligent in tagging the alarm line with the plaintiff's name, thereby allowing the burglars

---

[1] Private line service is a direct connection between two points. It bypasses the telephone exchange network (there is no need to dial a number to place a telephone call) and transmits the message directly and exclusively to a specific receiving destination. In this case, the connection was between the plaintiff's alarm system and the police station.

[2] It is not clear from the record whether the line from the junction box to the alarm system was installed by the telephone company or by personnel from the alarm system company. In any event, that installation plays no part in our decision.

[3] It appears from the record that the alarm system inside the plaintiff's store consisted of three or more microwave motion detectors. Once a beam from the motion detector was broken by some object, a signal would flash to the police station over the telephone line.

to identify the line and neutralize it. The defendant in its answer denied liability and asserted as an affirmative defense that its regulations, forming part of the relevant tariff on file with the Department of Public Utilities (DPU), barred a customer from recovery for interruptions in transmissions.

The case was tried before a jury. At the close of all the evidence, the telephone company moved for a directed verdict on the ground that the plaintiff's right to recovery was barred by its regulations. The motion was denied. The jury returned a verdict for the plaintiff in the amount of $278,252. The telephone company then filed a motion for judgment notwithstanding the verdict on the same ground it had stated before.[4] The judge agreed with the telephone company this time and allowed its motion.[5] The plaintiff has appealed from the judge's action, contending that the company's regulations did not apply to this case or, in the alternative, that the regulations are not enforceable as a matter of public policy.

1. *The company's regulation limiting liability.* We now recount some background in regard to the regulations that are designed to limit liability and the role that they play in relation to the telephone company.

By statute, the telephone company is made a common carrier. G. L. c. 159, § 12(*d*). As such, it has the right "to make rules and regulations, subject to the approval of the department [of public utilities] and the requirement of reasonableness . . . ." *Wilkinson* v. *New England Tel. & Tel. Co.,* 327 Mass. 132, 135 (1951). G. L. c. 159, § 14. These regulations include "those terms and conditions which govern the relationship between the [telephone company] and its customers." *Southwest-*

---

[4] The telephone company also claimed that the plaintiff failed to prove that it was negligent, or that any negligence on its part was the proximate cause of the plaintiff's damage. The judge denied relief on those grounds, and the telephone company did not appeal from that ruling.

[5] In the circumstances of this case, the judge was wise in allowing the matter to go to the jury and waiting for the return of the verdict before allowing the motion for judgment notwithstanding the verdict. See *Soares* v. *Lakeville Baseball Camp, Inc.,* 369 Mass. 974, 975 (1976); *Fahey* v. *Rockwell Graphic Syss., Inc.,* 20 Mass. App. Ct. 642, 643 n.4 (1985).

*ern Bell Tel. Co.* v. *Kansas Corp. Commn.,* 233 Kan. 375, 377 (1983). See *J. Meyer & Co.* v. *Illinois Bell Tel. Co.,* 88 Ill. App. 3d 53, 55 (1980). They "limit and define the duty of the [telephone company] to supply service. [They set] out what type of service the [telephone company] will supply and the scope of the service it undertakes to furnish. [They] completely cover[] the field." *Wilkinson,* 327 Mass. at 136. Such regulations are binding on the telephone company's customers "whether or not they have actual notice of them." *Pavadore* v. *School Comm. of Canton,* 19 Mass. App. Ct. 943 (1985). See *Wilkinson,* 327 Mass. at 135. A regulation limiting the liability of the telephone company for an interruption in service has been upheld. *Wilkinson, supra. J. Meyer & Co.* v. *Illinois Bell Tel. Co.,* 88 Ill. App. 3d at 55.

The regulation in this case, set out in the margin,[6] states in part that "[t]he [t]elephone company shall not be responsible to the customer for damages arising out of . . . interruptions

---

[6] Section 2.1.3 of the Private Line Tariff, M.D.P.U. No. 10, Part IV (1969), filed with the DPU in accordance with 220 Code Mass. Regs. §§ 5.02, 76.02 (1978), states in relevant part:

"A. In view of the fact that the customer has exclusive control of his communications over the facilities furnished him by the Telephone Company and of the other uses for which facilities may be furnished him by the Telephone Company and because of unavoidableness of errors incident to the services and to the use of such facilities of the Telephone Company, the services and facilities furnished by the Telephone Company are subject to the terms, conditions and limitations herein specified.

"B. The Telephone Company shall not be responsible to the customer for damages arising out of mistakes, omissions, interruptions, delays or errors or defects in transmission, except those caused by its failure to furnish facilities suitable for ordinary telephone service or its failure to maintain and operate such facilities in a manner proper for telephone service. The liability of the Telephone Company for damages caused by its failure to furnish facilities suitable for ordinary telephone service or its failure to maintain and operate such facilities in a manner proper for telephone service shall in no event exceed an amount equivalent to the proportionate charge to the customer for the period of service during which such mistake, omission, interruption, delay or error or defect in transmission occurs. Loss of profits by the applicant or subscriber in no event shall be considered as an element of damage for which the Telephone Company may be liable."

. . . in transmission." The telephone company argues that it is not responsible for the plaintiff's loss because it occurred as a result of an interruption in transmission. The plaintiff contends that the regulation is not applicable because its loss was not caused by any interruption in transmission but rather by the negligent act of the telephone company in affixing the plaintiff's name on the telephone line, thereby enabling the burglars readily to identify the line leading to the plaintiff's alarm system.

The plaintiff's argument ignores the realities of the situation. The jury found that the act of the telephone company in affixing the plaintiff's name to the line was negligent, and for purposes of this discussion we assume, without deciding, that that finding is binding upon us. That negligent act, by itself, however, was not the efficient cause of the plaintiff's loss.[7] That loss was the result of the successful use by burglars of the information on the tag to interrupt the transmission of the alarm signal to the police station. By interrupting the alarm signal, the burglars were able to ransack the plaintiff's store, at leisure, without police interference. Because the regulation protects the telephone company from liability for an interruption in a transmission, even one that has resulted from its own negligence, the judge was correct in allowing the defendant's motion. *Wilkinson* v. *New England Tel. & Tel. Co.*, 327 Mass. at 136. *Teleco, Inc.* v. *Southwestern Bell Tel. Co.*, 392 F. Supp. 692, 696-697 (W.D. Okla. 1974). *J. Meyer & Co.* v. *Illinois Bell Tel. Co.*, 88 Ill. App. 3d at 56.[8]

---

[7] In fact, the tag alone caused no harm during the four years it was attached to the line prior to the burglary.

[8] The plaintiff also raises questions as to the interpretation of the regulation in question. It has not been suggested by either party that it was necessary to secure an interpretation of the regulation by the DPU in advance of litigating the question of damages. Contrast *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 612-613 (1983); *Whitinsville Water Co.* v. *Covich, post* 925 (1987). Further, the regulation at issue in this case is relatively clear, and the plaintiff's arguments do not present difficult questions of interpretation.

The plaintiff contends that the telephone company failed to show that "the private line service constituted a transmission within the meaning of

24 Mass. App. Ct. 268                                                273

Lebowitz Jewelers Ltd., Inc. *v.* New England Telephone & Telegraph Co.

2. *The tariff and public policy.* The plaintiff argues that the tariff limiting the liability of the telephone company should be narrowly construed or eliminated as matter of public policy. That argument is better addressed to the Legislature than to us. The Legislature delegated the responsibility for regulating telephone company practices to the DPU. See G. L. c. 159, § 14. Pursuant to that authority, the Department approved the regulation in question. "A court may not substitute its judgment for that of the Legislature if the regulation comports with the power delegated." *Purity Supreme, Inc.* v. *Attorney Gen.,* 380 Mass. 762, 776 (1980).

In any event, several courts have held that there are sound public policy reasons for shielding the telephone company from certain damage claims.[9] Such limitation of liability enables the telephone company to set its rates at a reasonable level. See *Wilkinson* v. *New England Tel. & Tel. Co.,* 327 Mass. at 136, where the court held that a regulation similar to the one under scrutiny here was reasonable. The court stated that "[a]ny

---

the [regulation]." The relevant regulation governs "private line service." Private line service, as stated in note 1, *supra,* is a direct connection between two points which transmits a "message," in this case, an alarm signal, directly and exclusively to a receiving destination. Private line service is not a transmission but is the system by which transmissions are made. The transmission was the alarm signal to the police station which was interrupted by the burglars.

The plaintiff also argues that the regulation does not apply because the plaintiff did not have "exclusive control of [its] communications over the facilities furnished [it] by the Telephone Company." § 2.1.3 (A) of the regulation, see note 6, *supra.* The plaintiff appears to read this to require that the customer have control over the "facilit[y]" (the junction box located in the shoe store) in order for the regulation to apply. The argument fails because the regulation's focus is on the customer's control of customer communications, not of the facilities furnished by the telephone company.

[9] The regulation under discussion does not bar the telephone company from liability in all circumstances. By its terms, it limits the telephone company's liability for interruptions in transmissions. The telephone company is still liable for general acts of its agents that are not connected with any defect that occurs during transmission. See, e.g., *McNicholas* v. *New England Tel. & Tel. Co.,* 196 Mass. 138 (1907) (telephone company liable where child injured when a telephone lineman installing a line negligently dropped an insulator cover); and *Hoxie* v. *New England Tel. & Tel. Co.,* 287 Mass. 121 (1934) (telephone company liable where bicyclist killed by negligent operation of telephone company's motor vehicle).

other result might invite and encourage litigation which, because of the increased costs to the [telephone company], might ultimately effect an increase in rates for telephone service. By c. 159 rates and regulations are indissolubly bound together." Also see Justice Brandeis's comment in *Western Union Tel. Co.* v. *Esteve Bros. & Co.,* 256 U.S. 566, 571 (1921), that "[t]he limitation of liability [is] an inherent part of the rate."

In sum, the regulation is reasonable and of undisputed application to this action. The judge was correct in allowing the defendant's motion.

*Judgment affirmed.*