DISK 'N' DATA, INC. *vs.* AT&T COMMUNICATIONS &
another.[1]

Suffolk. May 5, 1993. - July 19, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Telephone Company. Negligence*, Telephone company.

A telephone company's tariff, as filed with and approved by the Federal
Communications Commission, limited the amount of damages a com-
mercial telephone subscriber could recover on claims alleging that the
company's negligent practices had resulted in the direction of a large
volume of unwanted calls to the subscriber's "800" telephone number,
on which the receiver of calls had to pay the toll charges. [888-889]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 30, 1984.

The case was tried before *John Paul Sullivan*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Robert Glass* (*Robert D. Friedman* with him) for the
plaintiff.

*John V. Woodard* for the defendants.

LYNCH, J. After a jury verdict in the Superior Court in
favor of the plaintiff against the defendants, AT&T Commu-
nications and American Telephone and Telegraph Company
(AT&T), a judge limited the plaintiff's damages pursuant to
Federal Communications Commission Tariffs No. 259 and
No. 2 (Tariff F.C.C. No. 259). See note 5, *infra*. The plain-

---

[1]American Telephone and Telegraph Company. On the jury's answers to
special questions the complaint was dismissed as to New England
Telephone and Telegraph Company and Southwestern Bell Telephone
Company; they are not parties to this appeal.

tiff appealed. We transferred the case here on our own motion, and we now affirm.

We summarize the relevant facts.[2] The plaintiff sold computer software by "telemarketing." It advertised and promoted its business by using a toll-free "800" telephone number obtained in 1983 from New England Telephone and Telegraph Company, where the receiver pays the charges on incoming telephone calls. In 1983, an 800 telephone number was assigned to American Transtech, Inc., a wholly-owned subsidiary of AT&T, to provide information to AT&T shareholders. The AT&T telephone number differed from the plaintiff's telephone number by one digit.

The plaintiff received approximately 21,000 telephone calls intended for AT&T shareholder services between 1983 until July, 1985.

In March, 1984, AT&T offered to change the plaintiff's 800 number and to "sift"[3] telephone calls to the existing number for two to three months. The plaintiff rejected the offer at first, but in July, 1985, agreed to change its 800 telephone number and accepted a sift of calls for a period of one year. The plaintiff subsequently filed this action alleging breach of contract, tort liability, and unfair and deceptive business practices to recover lost profits, income, and consequential damages.[4]

---

[2]The trial and the hearing on damages were tape recorded with no stenographer present, but the recordings were not audible. Therefore, pursuant to Mass. R. A. P. 8 (d), as amended, 378 Mass. 932 (1979), the parties submitted a statement of agreed facts as the record on appeal.

[3]An AT&T operator would intercept a call, ask whom the caller was trying to reach, and provide the caller with the new telephone number.

[4]AT&T investigated the plaintiff's complaints and found no evidence that the AT&T shareholder services toll free number was incorrectly listed in any AT&T directory assistance data bank or incorrectly published in any AT&T directory or other publication. The plaintiff presented deposition testimony which indicated that its 800 number was erroneously distributed by AT&T long distance operators, incorrectly listed in AT&T directory assistance data banks and an AT&T employee handbook, and disseminated by a prerecorded message which answered calls by AT&T shareholders dialing an out-of-service number.

The plaintiff concedes the defendants' liability for damages may be limited by properly filed and approved tariffs. Tariffs which limit a common carrier's liability have the "force and effect of law." *Video Educ. Career Inst.* v. *American Tel. & Tel. Co.*, C.A. No. 88-1721-N (D. Mass. 1990). *Stand Buys, Ltd. Corp.* v. *Michigan Bell Tel. Co.*, 646 F. Supp. 36, 37 (E.D. Mich. 1986). *Peacock's, Inc.* v. *South Cent. Bell*, 455 So. 2d 694, 698 (La. Ct. App. 1984). *Carter* v. *American Tel. & Tel. Co.*, 365 F.2d 486, 496 (5th Cir. 1966), cert. denied, 385 U.S. 1008 (1967).

Tariff F.C.C. No. 259 (tariff)[5] limited AT&T's liability for damages except in cases of wilful misconduct. Since the jury found no wilful misconduct on the part of the defendants, the principal issue in this case is whether the applicable tariff, properly applied to the facts of this case, limits the defendants' liability. The tariff limits liability for any claim or suit "for damages associated with the installation, provision, termination, maintenance, repair or restoration" of 800 service. The basis of the plaintiff's claim was that AT&T personnel erroneously distributed its toll-free number as that of AT&T shareholder services, thus causing a large number of unwanted calls to the plaintiff's 800 number. See note 4, *supra*. The judge's ruling relied on the tariff's limiting liability "associated with the . . . provision" of 800 service, and

---

[5]After the January 1, 1984, divestiture, AT&T Wide Area Telecommunications Service (WATS) and AT&T 800 service were managed by AT&T Communications and governed by Tariff F.C.C. No. 259 and Tariff F.C.C. No. 2, which are substantively identical to their predecessor, also identified as Tariff F.C.C. No. 259.

Tariff F.C.C. No. 2, § 2.3.1 A, issued July 30, 1985, provides: "The Company's liability, if any, for its willful misconduct is not limited by this tariff. With respect to any other claim or suit, by a Customer or by any others, for damages associated with the installation, provision, termination, maintenance, repair or restoration of WATS, and subject to the provisions of B. through G. following, the Company's liability, if any, shall not exceed an amount equal to the monthly recurring charge provided for under this tariff for the AT&T 800 Service access line, the AT&T WATS access line, or AT&T MEGACOM 800 Service, whichever is appropriate. This liability for damages shall be in addition to any amounts that may otherwise be due the Customer under this tariff as a Credit Allowance for Interruptions . . . ."

that the tariff therefore limited the plaintiff's recovery. We agree. The tariff at issue has been applied to limit liability in similar circumstances. See *Video Educ. Career Inst.* v. *American Tel. & Tel. Co., supra* (AT&T's liability for misdirection of telephone calls caused by faulty software device limited by tariff); *Stand Buys, Ltd. Corp.* v. *Michigan Bell Tel. Co., supra* (tariff limited AT&T's liability for delays and disconections of service in absence of wilful misconduct). It is apparent that the negligent conduct that formed the basis of the claim caused a disruption and interference with the plaintiff's 800 service. As such, it fell within the specific provisions of the tariff.

The plaintiff's reliance on *Lebowitz Jewelers Ltd.* v. *New England Tel. & Tel. Co.,* 24 Mass. App. Ct. 268 (1987), is misplaced. There the Appeals Court applied a more narrowly drafted tariff to limit the liability of the defendant where the damages arose from an interruption in service. *Lebowitz Jewelers Ltd.* does not stand for the proposition that a broader limit on liability in an applicable tariff would be improper.

The plaintiff argues that public policy militates against our applying the tariff to limit liability in these circumstances. The provision of interstate communication service, however, is determined according to Federal law. *Ivy Broadcasting Co.* v. *American Tel. & Tel. Co.,* 391 F.2d 486, 491 (2d Cir. 1968). Federal courts have upheld similar tariffs on public policy grounds. *Travelers Ins. Co.* v. *SCM Corp.,* 600 F. Supp. 493, 496 (D.D.C. 1984) (tariff is "binding public regulation — established as a matter of public policy — to limit" liability). *Pilot Indus.* v. *Southern Bell Tel. & Tel. Co.,* 495 F. Supp. 356, 361 (D.S.C. 1979), quoting *Western Union Tel. Co.* v. *Esteve Bros. & Co.,* 256 U.S. 566, 571 (1921) (limitation of liability "an inherent part of the rate").

*Judgment affirmed.*