Borenstein, J.
This matter is before the court on defendant New England Telephone and Telegraph Company’s (“NET”) motion for summary. In this action, the plaintiffs have sued NET for the alleged negligence of a telephone operator in the handling of an emergency phone call by Kathleen Dempsey MacDougali (“Dempsey MacDougali”). In support of their motion for summary judgment, NET, first, asserts that the tariffs authorizing telephone service were not violated and no liability may follow from the operator’s alleged negligence, and, second, that in any event no duty was owed by NET to Dempsey MacDougali.
For the reasons stated herein, the defendant’s motion is DENIED.
BACKGROUND
The facts taken in the light most favorable to the nonmoving party are as follows:
On August 23, 1992, Dempsey MacDougali placed a telephone call to an NET operator seeking emergency assistance for stab wounds which had been inflicted upon her by an unknown assailant. The call to NET was received by Victoria Sabalewski (“Sabalewski”). Dempsey MacDougali stated at the outset to Sabalewski that she had “been stabbed” and was in need of help. Sabalewski, believing that Dempsey MacDougali needed help, routed the call to the Lexington Fire Department. Sabalewski then placed Dempsey MacDougali and the Fire Department on hold so that they could speak to one another. Sabalewski did not identify herself as an NET employee or operator to the Lexington Fire Department.
Subsequently, the call from Dempsey MacDougali was re-routed back to Sabalewski. Again, Sabalewski spoke with the dispatcher without identifying herself and asked if the call had been connected. The dispatcher informed Sabalewski that he had been unable to obtain the address from which the distress call had been placed. Apparently, with both the dispatcher and Dempsey MacDougali on the line, Sabalewski again put the individual callers on hold. Sabalewski made no effort to ascertain Dempsey MacDougall’s location.
At some point, the call was again connected to Sabalewski. On that occasion, she asked if anyone was there, and hearing nothing, she disconnected the call. Sabalewski did nothing else to follow up on the initial call for assistance from Dempsey MacDougali. The Lexington Fire Department dispatcher did nothing because Sabalewski had not identified herself and he felt the call had been a “prank.” Dempsey MacDougali died in her apartment some time after making the call to Sabalewski.
*674 At the time of MacDougall’s death, NET had written policies relative to the handling of emergency calls. Specifically, an operator receiving a call from someone in distress who fails to respond was required to follow up by ascertaining the person’s address through the “Repair Service Security Line” and forwarding that information to the proper emergency agency. In this case, Sabalewski failed to adhere to NET’S emergency call policies.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c); 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summaiy judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summaiy judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The nonmoving party cannot defeat the motion for summaiy judgment by resting on its “pleadings and mere assertions of disputed facts . . .” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Establishing a genuine issue of material fact requires the nonmoving parly to put forth specific facts. Pederson v. Time, Inc., supra at 17. In addition, this court is bound by the oft-repeated dictate that the nonmoving party need only establish “[A] toehold ... to survive a motion for summary judgment.” Marr Equipment Corp. v. I.T.O. Corp., 385 Mass. 1001 (1982). Summaiy judgment is not intended to be used as a vehicle for “trial by affidavit.” Haenshaw v. Cobeceiras, 14 Mass.App.Ct. 225 (1982).
At the outset, NET argues that as there was no violation of the tariffs regulating telephone service, no cause of action lies against the telephone service provider for Sabalewski’s failure to appropriately handle the call. In support of this assertion, NET cites various cases that stand for the general proposition that the tariffs are the sole authority governing the relationship between a telephone company and its customers. See Disk N'Data, Inc. v. AT&T Communications, 415 Mass. 886 (1993); Lebowitz Jewelers Ltd., Inc. v. New England Telephone & Telegraph Co., 24 Mass.App.Ct. 268 (1987); Wilkinson v. New England Telephone and Telegraph Co., 327 Mass. 132 (1951). The reasoning behind abroad rule precluding liability based on the tariffs, the plaintiff argues, derives from the practical and policy concerns thatan extension ofliability to telephone service providers outside of the tariffs would expose providers to liability for an infinite number of events related to telephoneservice.[1]
The caselaw, however, does not support the utilization of the tariffs as a shield in all instances where a plaintiff may have a cause of action against a telephone provider. In answer to the very question of how far to extend the tariffs, the Supreme Judicial Court wrote the following in Lebowitz Jewelers Ltd., Inc.:
The regulation [tariffs] under discussion does not bar the telephone company from liability in all circumstances. By its terms, it limits the telephone company’s liability for interruptions in transmissions. The telephone company is still liable for general acts of its agents that are not connected with any defect that occurs during transmission.
24 Mass.App.Ct. at 273, n.9 (emphasis added) (citations omitted). Clearly, the tariffs are limited to the types of economic harms and consequences that flow from service interruptions and the like. The tariffs do not apply under circumstances such as this where the allegation is of active negligence by an agent or employee of a telephone company.
Finally, in order for a negligence action to survive, the plaintiff must establish each element of negligence. In this case, NET argues that the plaintiff cannot establish a duty owed by them to the plaintiff as a matter of law. NET is correct in its assertion that the existence of a duty running from a defendant to a plaintiff is a question of law. See, Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 629 (1988). In general, however, “[a] duty to act with reasonable care to prevent harm to a plaintiff. . . may give rise to tort liability based on a special relationship between the plaintiff and the defendant.” Irwin v. Ware, 392 Mass. 745, 756 (1984).
In this case, the evidence presented relative to the relationship between Dempsey MacDougall and NET, the rules for operators propounded by NET relative to emergency calls, and the actions or inactions of Sabalewski are sufficient to gain the plaintiffs the needed “toehold” on the issue of duty. Having addressed duty, the court notes, for completeness, that there is sufficient evidence in the record as to the remaining elements of negligence.
ORDER
For the reasons stated, New England Telephone and Telegraph’s motion for summary judgment is hereby DENIED.

 The most often cited example of this are situations involving loss of service.